TEMPLETON, Appellant, v. CRULL, Respondent.

*April 2—May 1, 1962.*

For the appellant there was a brief and oral argument by *Cleland P. Fisher* of Janesville.

For the respondent there was a brief by *Berg & Berg* of Janesville, and oral argument by *Roy E. Berg.*

FAIRCHILD, J. 1. *Plaintiff's negligence as to speed.* Plaintiff contends that there was no evidence to support the jury's finding that he was negligent as to speed. The only evidence

of plaintiff's speed was his own testimony that he was traveling 50 miles per hour. The applicable maximum rate was 55. Defendant argues, however, that plaintiff's speed was greater than was reasonable and prudent.

Sec. 346.57 (2), (3), Stats., provides in part:

"(2) No person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard for the actual and potential hazards then existing.

"(3) The operator of every vehicle shall, consistent with the requirements of sub. (2), drive at an appropriate reduced speed . . . when approaching a hillcrest, . . . and when special hazard exists with regard to other traffic or by reason of weather or highway conditions."

The road was described as rolling, with some little rises and dips. There was a dip south of the place of collision; the collision happened almost at the crest of a rise, and there was a dip to the north of the rise. Photographs in the record, however, make it clear that the dips and rise were not sufficiently pronounced to qualify the rise as a "hillcrest" or a hazard requiring a reduced speed. The weather was good; the road was dry. Although the night was overcast, there was no fog. A finding of negligent speed is without support in the record. This finding may have affected the jury's comparison of negligence and the jury might have attributed to plaintiff less than 50 percent of the total if it had found causal negligence with respect to lookout only.

*2. Plaintiff's negligence as to lookout.* Plaintiff thought that his bright beams were on at the time of the accident. Although plaintiff testified that the horse was hidden from view by the rise in the road, the jury could believe from photographs in the record that an object as tall as a horse could have been observed on or alongside the road ahead.

The complaint alleged that the horse "suddenly, and without warning of any kind, darted into the highway upon

which plaintiff was operating his said automobile and directly in front of the automobile of plaintiff, . . ." This portion was called to the attention of the jury. Plaintiff stated to an officer that he "saw a horse coming toward him, thought the animal would miss him or just pass. It must have run in front of him, and he couldn't avoid hitting the horse." Plaintiff testified at one point that he saw the horse about two seconds before they hit (about 150 feet at 50 miles per hour), and later testified that when he first saw the horse it was 20 or 30 feet straight ahead of him in the middle of the road, moving toward him, and he did not know where the horse had come from.

Plaintiff's varying statements, considered with reference to the condition of visibility disclosed by the photographs, could lead the jury to infer that plaintiff failed to maintain a proper lookout.

3. *Lookout as causal negligence.* Plaintiff contends that faulty lookout could not have been causal. The jury could, however, have inferred from the photographs that plaintiff could have seen the horse in time to have avoided collision.

Plaintiff's request for an instruction on the emergency doctrine was properly denied. No issue was submitted with respect to management and control.

4. *Defendant's negligence.* The horse was pastured in an orchard on the east side of the road. The orchard was surrounded by a 32 or 40-inch fence with strands of barbed wire at the top. Photographs indicate that the fence was sagging and not in good condition.

In the wintertime the horse was kept in a building on the west side of the road. There was testimony that horses have a tendency, if unrestrained, to roam and to go to the place where they have been sheltered, although there was other testimony that this horse had no such propensity. Neighbors testified that they had seen the horse loose along the road on several occasions.

We think that the jury could properly find defendant negligent with respect to keeping and restraining the horse.

In *Fox v. Koehnig* [1] a horse escaped from a barnyard and collided with an automobile on the highway. This court held that the collision under the circumstances disclosed by the evidence was not reasonably foreseeable as a result of the owner's negligent failure to maintain a more-secure fence around his barnyard and therefore the negligence was not the proximate cause of the injury. The case was distinguished on its facts, and recovery granted for injuries sustained in a collision on the highway in *McCauley v. International Trading Co.* [2] Foreseeability is no longer treated as an element of the cause issue. [3] If, in 1926, there were policy reasons for holding that one who negligently permitted his animals to be at large on the highway could not be liable for damages resulting from a collision with an automobile, we do not find such reasons valid under traffic and highway conditions today. In so far as *Fox v. Koehnig, supra,* denied liability on that ground, it is overruled.

Under the circumstances of this case we deem it fair not to allow costs in this court at this time. The judgment ultimately entered in circuit court should include the amount which the party prevailing in circuit court could have recovered as costs on this appeal if he had prevailed here.

*By the Court.*—Judgment reversed, with directions for a new trial on issues other than damages. Costs in this court to be awarded by the circuit court as stated in the opinion.

[1] (1926), 190 Wis. 528, 209 N. W. 708.
[2] (1954), 268 Wis. 62, 68, 66 N. W. (2d) 633.
[3] See *Osborne v. Montgomery* (1931), 203 Wis. 223, 234 N. W. 372; *Pfeifer v. Standard Gateway Theater* (1952), 262 Wis. 229, 55 N. W. (2d) 29; *Longberg v. H. L. Green Co.* (1962), 15 Wis. (2d) 505, 113 N. W. (2d) 129.