Naomi GIBBS, Appellant,

v.

Shannon JACKSON, Appellee.

No. 12–95–00081–CV.

Court of Appeals of Texas,
Tyler.

June 30, 1997.

Rehearing Overruled Aug. 28, 1997.

Gregory P. Grajczyk, Noel L. Johnson, Longview, for appellant.

Robert D. Bennett, Gilmer, for appellee.

Before RAMEY, C.J., and HOLCOMB and HADDEN, JJ.

HADDEN, Justice.

This is an appeal of a judgment in a case which arose from the collision between an automobile driven by Appellee, Shannon Jackson ("Jackson"), and a horse being pastured by Appellant, Naomi Gibbs ("Gibbs"). On August 9, 1992, Jackson was driving her automobile on Farm–to–Market Road 49 in rural Upshur County, Texas, and collided with the horse. The horse was being kept by Gibbs in a fenced pasture adjacent to the road; however, at the time of the collision, the horse was standing in the road. The collision caused injuries to Jackson, totalled her automobile and killed the horse.

Jackson filed suit against Gibbs, alleging that the collision was caused by several negligent acts and omissions of Gibbs. In her petition, Jackson generally faulted Gibbs for failing to properly maintain the fence, and for failing to restrain and prevent the horse from being on the road. In response, Gibbs asserted that the area where the collision occurred was in a free range area of the county outside the "stock law" boundaries in Upshur County, Texas, and that she had no statutory duty to restrain the horse. Gibbs also maintained that she had no common law duty to restrain the horse.

The record shows that during the trial there was no direct evidence explaining how the horse got out of the pasture and on to the road. There was some evidence that the horse, prior to the occurrence in question, had attempted to go through a fence on the back side of the pasture away from the highway into a neighbor's property which pastured some mares. This only happened once and was not on the highway side of the pasture. Jackson further testified that a few days after the collision, she went back to the scene and saw that the fence next to the highway was partially down and not in good repair. Gibbs, however, testified that the fence was up and in good condition on the occasion of the collision, but that later the fence was partially down because a few days after the incident with the horse, a drunk person had missed a curve and driven his vehicle into that part of the fence. At the close of the testimony, Gibbs moved for an instructed verdict on the grounds that Jackson had failed to show that she had a common law duty to restrain the horse. The court overruled Gibbs' motion for an instructed verdict and submitted the case to the jury on the negligence issues. Based upon the jury's findings of negligence and damages, the court rendered judgment in favor of Jackson for $7,000 plus interest and costs. Gibbs raises five points of error on appeal. We will **affirm.**

In her first four points of error, Gibbs asserts that the trial court erred in rendering judgment for Jackson because Jackson failed to plead and prove a statutory or common law duty to fence and restrain the horse. No sufficiency of the evidence points were raised by Gibbs on appeal. Thus, the issue before us is whether Gibbs had a duty to restrain the horse and prevent it from going onto Farm–to–Market Road 49 where the collision occurred. We will address all four points of error together.

The threshold question in every negligence action is whether there exists a legally cognizable duty, the breach of which would give rise to a cause of action for the recovery of damages. *Centeq Realty, Inc. v.*

*Siegler,* 899 S.W.2d 195, 197 (Tex.1995); *Graff v. Beard,* 858 S.W.2d 918, 919 (Tex. 1993). An individual seeking to recover must show the existence and violation of a duty owed to her by the defendant to establish liability. The existence of a statutory duty or common law duty is a question of law for the court to decide from the facts surrounding the occurrence in question. *Centeq,* 899 S.W.2d at 197.

### STATUTORY DUTY

█ The stock laws cited by Gibbs are contained in Chapter 143 of the Texas Agriculture Code (Vernon 1982 and Supp.1997). Subchapter E of Chapter 143 generally prohibits animals from running at large on highways. *See* Tex. Agric. Code Ann. §§ 143.101–143.108 (Vernon 1982 and Supp. 1997). However, numbered farm-to-market roads are specifically excluded from the statutory definition of "highways." Tex. Agric. Code Ann. § 143.101 (Vernon 1982 and Supp. 1997). The evidence in the present case shows that the collision took place on Farm–to–Market Road 49. Therefore, the prohibitions of subchapter E are inapplicable and create no statutory duty in the area where the collision occurred. *Cf. Hollingsworth v. King,* 810 S.W.2d 772, 775 (Tex.App.—Amarillo 1991), *writ denied per curiam,* 816 S.W.2d 340 (Tex.1991). Also, the Texas legislature has created a local option for communities to hold elections to determine whether livestock must be restrained in local areas. Tex. Agric. Code Ann. § 143.021 (Vernon 1982). In the instant case, however, the parties stipulated during trial that the area where the collision occurred was not covered by any type of stock law or local ordinance, and there is no dispute that the incident occurred on a numbered farm-to-market road. Therefore, we conclude that there was no statutory duty on the part of Gibbs to pen or restrain the horse on Farm–to–Market Road 49 where the collision occurred.

### COMMON LAW DUTY

Under the old English common law, every man was required to restrain his livestock either by tethering or by enclosure. *Davis v. Davis,* 70 Tex. 123, 7 S.W. 826, 827 (Tex.

1888). However, early in our State's history we departed from the common law rule because it was unsuited to our conditions. *Turner v. Big Lake Oil Co.,* 128 Tex. 155, 96 S.W.2d 221, 224 (1936); *Clarendon Land Inv. & Agency Co. v. McClelland,* 86 Tex. 179, 23 S.W. 576, 577 (1893); *Davis,* 7 S.W. at 827. The Supreme Court in *Clarendon* held that Texas owners of cattle or other livestock were allowed the freedom of letting those animals roam. *Clarendon Land Inv. & Agency Co. v. McClelland,* 89 Tex. 483, 34 S.W. 98 (1896). They were not required to fence them, and were not liable for damages that the animals caused. *Id.* In its opinion on rehearing in *Clarendon,* the Supreme Court stated:

> If the liability for damages rests upon the ground of negligence, and that negligence, at common law, is presumed from a failure to perform the duty of restraint, then, *there being no duty of restraint of the animal placed upon the owner by the laws of this state,* there can be no negligence in permitting such cattle to run at large .or upon the land of their owner, unless knowledge of the character of the stock as to fence-breaking qualities, and their condition as to disease, be brought home to the owner; and, there being no negligence, liability does not exist.

*Clarendon,* 89 Tex. 483, 35 S.W. 474, 475 (1896) (emphasis added).

█ Gibbs relies on the hoary case of *Clarendon* in asserting her claim that she had no common law duty to restrain the horse and keep it off the highway. She contends that absent statutory authority to the contrary, the open range philosophy has been preserved even today, and that owners of domestic animals may allow their animals to run at large unless they are known to the owner to be vicious in the matter of fence-breaking or otherwise, or they are afflicted with infectious or contagious diseases. *E.g., Hollingsworth,* 810 S.W.2d at 776 (vehicle collision with horse); *Gholson v. Parrish,* 92 S.W.2d 1113 (Tex.Civ.App.—Fort Worth 1936, no writ) (vehicle collision with cow); *Haralson v. Suzuki,* 300 S.W. 190 (Tex.Civ. App.—Texarkana 1927, no writ) (mules caused damage to crops).

Jackson asserts, however, that this common law duty should now be recognized since the common law is of a transitory nature and can be created by changes in society. Citing *El Chico Corp. v. Poole,* 732 S.W.2d 306 (Tex.1987), she urges this Court to recognize that there has been an evolution of the common law and that foreseeability is a key factor to be considered. She points out that, although Texas failed to adopt the original common law rule because it was not suited to the rural condition of our state at that time, conditions on public roads have dramatically changed over the past one hundred years. She insists that the principle followed in *Poole* applies to the present case, and that this court must now recognize these changes in our society and allow the law to change with them. She postulates that the cases relied on by Gibbs are cases from a time during which our society and the amount of automobile traffic were tremendously different from today and that it is unfathomable today to believe that the right of a person to possess an animal surpasses the rights of its citizens to ·use the roads of the State of Texas. We agree.

In *Poole,* the court recognized the common law liability of an alcohol beverage licensee who sells intoxicants to an intoxicated driver and outlined how our courts have consistently made changes in the common law of torts as the need arose in a changing society. *See Poole,* 732 S.W.2d at 314–15. *See, e.g., Sanchez v. Schindler,* 651 S.W.2d 249 (Tex.1983) (recovery of loss of society and mental anguish allowed in response to needs of modern society); *Parker v. Highland Park, Inc.,* 565 S.W.2d 512 (Tex.1978) (landowner's duty owed to tenants extends to guests); *McKisson v. Sales Affiliates, Inc.,* 416 S.W.2d 787 (Tex.1967) (strict liability in tort expanded to include defective products); *Decker & Sons, Inc. v. Capps,* 139 Tex. 609, 164 S.W.2d 828 (1942) (manufacturer of impure food liable for injuries in absence of negligence as a matter of public policy); *Hill v. Kimball,* 76 Tex. 210, 13 S.W. 59 (1890) (recognition of cause of action for infliction of emotional and mental distress).

In 1935, the Texas legislature apparently began to recognize that progress in public road travel called for change because it began to adopt legislation restricting owners from knowingly permitting their domestic animals to be on U.S. highways or state highways. Acts 1935, 44th Leg., 467, ch. 186 § 1. As late as 1987, the legislature amended the state's stock laws to include an additional list of highways to be protected from roaming livestock. TEX. AGRIC. CODE ANN. §§ 143.101 (Vernon 1982 and Supp.1997). Thus, cases arose in Texas which addressed the statutory duty of owners of domestic animals to restrain their livestock from roaming on highways. *Cf., see Lee v. Huntsville Livestock Services,* 934 S.W.2d 158 (Tex. App.—Houston [14th Dist.] 1996); *Merendino v. Burrell,* 923 S.W.2d 258 (Tex.App.— Beaumont 1996); *Weaver v. Brink,* 613 S.W.2d 581 (Tex.Civ.App.—Waco 1981, writ ref'd n.r.e.).

In *Miller v. Cozart,* 394 S.W.2d 22 (Tex. Civ.App.—Dallas 1965, no writ), the Dallas court of appeals recognized the duty of a domestic animal owner to keep his animals off the public roads. In that case, the owner of a cow wandered onto a highway and was involved in a collision with a vehicle. The court stated that the owner "owed a continuing duty to exercise ordinary care to prevent the cattle from escaping and creating hazardous conditions upon the highway." *Miller,* 394 S.W.2d at 24.

In *McDonnold v. Weinacht,* 465 S.W.2d 136 (Tex.1971), a trespass to try title case, the Supreme Court addressed an issue involving adverse possession and supported its holding by stating "our courts have never recognized the common law rule of England that requires every man to restrain his cattle either by tethering or by enclosure." *Id* at 141. The court in *McDonnold* went on to conclude that it was well settled "that the use of unenclosed land for grazing livestock does not, of itself, constitute adverse possession." *Id.* Thus, this holding does not directly address the duty of a domestic animal owner to keep his animals off of a public road.

Gibbs also relies heavily on *Hollingsworth, supra.* There, the Amarillo court of appeals addressed a factually similar case wherein an automobile was in collision with a horse, and summary judgment had been granted by the

trial court. The Amarillo court reversed the case on the grounds that certain summary judgment evidence was not authenticated. The court found that the owner of the horse failed to negate the existence of a statutory duty to fence his livestock and thus, the issue of whether stock laws were in effect was still at issue. In its opinion, the court additionally noted that since the owner of the livestock contended that no common law duty to fence his livestock existed in Texas, it was necessary to discuss the issue because it would arise upon retrial. In its discussion, the court pointed out the language in *Clarendon,* which we quote above, as well as several other court of civil appeals cases which had cited *Clarendon,* most of which did not involve an animal on a public road and which dealt with the issue of whether or not a stock law was in effect at the time the roaming livestock caused damages. Also in *Hollingsworth,* the injured parties argued, as does Jackson, that under modern traffic conditions, there is a duty to restrain domestic animals from roaming on public roads. The *Hollingsworth* court declined to address that issue, but simply stated that if it were "writing on a clean slate, the Hollingsworths' argument would be persuasive." It is interesting to note, however, that the Hollingsworths made application to the Supreme Court for a writ of error and in a short paragraph opinion denying the application, the court made the following conclusion:

> Their [the Hollingsworths'] sole contention in this Court is that the Court of Appeals erred in holding that there is no common law duty to restrain livestock. We express no opinion on this contention and deny the application. In so doing, however, we should not be taken as approving any other part of the court of appeals' opinion.

*Hollingsworth v. King,* 816 S.W.2d 340 (Tex. 1991).

Other jurisdictions have addressed the issue of the liability of the owner of a domestic animal for damage to a motor vehicle or injury to a person riding therein resulting from a collision between the animal and the vehicle. Since 1960, at least thirteen states have recognized the rule that the owner of the animal did have a common law duty to keep the animal off the highway, some courts emphasizing that in light of modern traffic conditions, animals running at large on the highway present a potential danger to motorists and that it is reasonable to anticipate that injury will occur. *See* James L. Rigelhaupt, Jr., J.D., Annotation, *Liability of Owner of Animal for Damage to Motor Vehicle or Injury to Person Riding Therein Resulting from Collision with Domestic Animal at Large in Street or Highway,* 29 A.L.R.4th 431, 443–447 (1984). *Compare,* Rigelhaupt at 447–449. In *Reed v. Clark,* 277 S.C. 310, 286 S.E.2d 384 (1982), the Supreme Court of South Carolina noted that the common-law rule was adopted at a time when there was no elaborate system of highways and few motor vehicles, while at the same time the ownership of horses, cattle, sheep, and the like was the rule rather than the exception. The court noted that over the years, however, the conditions changed drastically with the advent of the motor vehicle, the extensive network of improved highways, the phenomenal increase in traffic, and the speed permitted by law. At the same time, ownership of domestic animals declined significantly and, today, they are largely for recreation and pleasure, as opposed to the necessity and means of support they once were.

In the case of *Fox v. Koehnig,* 190 Wis. 528, 209 N.W. 708, (1926), the court recognized that at common law, it was not unlawful for horses and other domestic animals to run at large on public highways, and reversed a judgment against the owner of a horse in an action against him by the owner of an automobile which was in collision with the horse. But, in *Templeton v. Crull,* 16 Wis.2d 416, 114 N.W.2d 843 (1962), the Wisconsin court overruled *Fox v. Koehnig* stating that if, in 1926, there were policy reasons for holding that one who negligently permitted his animals to be at large on the highway could not be liable for damages resulting from a collision with an automobile, such reasons were invalid under traffic and highway conditions existing today.

In view of modern traffic conditions and the foreseeability of the highly dangerous condition created by the presence of domes-

tic livestock on a public road, we conclude that in Texas, an owner of domestic livestock has the common law duty to keep his domestic livestock from roaming at large on public roads. His liability rests on proof of negligence with respect to his care and custody of his domestic animals. The duty here is to exercise reasonable care to avoid foreseeable injury to others. *Poole*, 732 S.W.2d at 315. In the instant case, the court gave a broad submission to the jury under a common law negligence definition and instruction. The jury found that Gibbs was negligent and that it was the proximate cause of the occurrence in question. Gibbs has not challenged the sufficiency of the evidence to support these findings. Therefore, we overrule Gibb's first four points of error.

In point of error five, Gibbs complained that there were no instructions to the jury on what duty Gibbs may have owed to Jackson. The alleged error is not grounds for reversal of the judgment unless the question, instruction, or definition was submitted to the court for its consideration in substantially correct wording. *See* Tex.R. Civ. P. 278. Gibbs failed to make a proper request under the rules and has therefore waived any right to complain of the manner in which that issue was submitted. Point of error five is overruled.

The judgment of the trial court is accordingly **affirmed.**