**Naomi GIBBS, Petitioner,**

v.

**Shannon JACKSON, Respondent.**

No. 97–0961.

Supreme Court of Texas.

Argued Oct. 22, 1998.

Decided April 1, 1999.

Rehearing Overruled June 10, 1999.

Gregory P. Grajczyk, Milbank, SD, for Petitioner.

Robert D. Bennett, Gilmer, for Respondent.

Justice ABBOTT delivered the opinion for a unanimous Court.

This case considers the creation of a new common-law duty to keep horses from roaming onto farm-to-market roads in areas that have not adopted local stock laws. For the reasons given below, we decline to create that common-law duty. Accordingly, we reverse the court of appeals' judgment and render judgment that Jackson take nothing.

## I

Shannon Jackson was driving her car on Farm–to–Market Road 49 in rural Upshur County when she collided with a horse named Tiny that was standing in the road. The collision injured Jackson, totaled her automobile, and killed Tiny. Jackson sued Naomi Gibbs, who had been keeping Tiny in a fenced pasture adjacent to the road. Jackson alleged that Gibbs negligently failed to properly maintain the fence around the pasture, failed to restrain Tiny, and failed to prevent Tiny from roaming unattended onto the road.

At trial, the parties disputed whether Tiny had ever previously escaped from Gibbs's pasture. There was no direct evidence, however, explaining how Tiny got out of the pasture and onto the road when struck by Jackson. Jackson testified that she returned to the accident site a few days after the collision and discovered that part of the fence next to the road was partially down and in disrepair. Gibbs contended that the fence was in good repair when the collision occurred but was damaged a few days after the incident when a drunk driver missed a curve and ran into the section of the fence in question.

Gibbs contended at trial that, regardless of the fence's condition or Tiny's corralability, she owed Jackson no duty to keep Tiny off the road because the collision occurred on a farm-to-market road in a "free-range" area. Essentially, Gibbs contended that she owed no duty because no local stock law had been adopted for the area of the farm-to-market road where Tiny was struck. The trial court rejected that argument and submitted a general negligence charge to the jury. The jury found Gibbs negligent and awarded Jackson $7,000 in damages, plus interest and costs.

The court of appeals affirmed. 959 S.W.2d 668. It concluded that Gibbs had no statutory duty to restrain Tiny but did have a common-law duty to exercise reasonable care to keep "domestic livestock from roaming at large on public roads." Id. at 673. The court of appeals imposed this duty because of "modern traffic conditions and the foreseeability of the highly dangerous condition created by the presence of domestic livestock on a public road." Id. at 672–73.

Gibbs petitions this Court to reverse the court of appeals' judgment and hold that she owes Jackson no common-law duty to prevent Tiny from being loose on the farm-to-market road. Jackson counters that a common-law cause of action is appropriate because our society cannot permit livestock to roam free on heavily traveled roadways.

## II

 This Court has never previously considered whether a person responsible for livestock has a common-law duty to ensure that the animals do not stray onto farm-to-market roadways. Texas courts of appeals have arrived at differing results when considering the issue in the absence of a controlling local stock law. *Compare Merendino v. Burrell*, 923 S.W.2d 258, 261 (Tex.App.—Beaumont 1996, writ denied) (assuming a common-law negligence duty to keep a bull off a farm-to-market road), *and Miller v. Cozart*, 394 S.W.2d 22, 24 (Tex.Civ.App.—Dallas 1965, no writ) (stating that appellant had a continuing duty to exercise ordinary care to prevent his cattle from escaping onto a farm-to-market road), *with Hollingsworth v. King*, 810 S.W.2d 772, 776–77 (Tex.App.—Amarillo) (refusing to recognize such a common-law duty "in the face of all the precedential authority that, in the absence of statutory direction, no common-law duty to fence exists in this state"), *writ denied per curiam*, 816 S.W.2d 340 (Tex.1991). In denying the application for writ of error in *Hollingsworth*, we expressed "no opinion" regarding the existence of a "common law duty to restrain livestock." *Hollingsworth*, 816 S.W.2d at 340.

Our refusal to adopt such a common-law duty today derives from the confluence of historic common law, century-old constitutional provisions, multiple legislative pronouncements, and local stock-law decisions. Under the English common law inherited by the United States, an owner of a domestic animal had a duty to prevent the animal from trespassing onto a neighbor's land, but had no duty to prevent the animal from straying onto a public roadway, unless the owner had prior knowledge that the animal had vicious propensities.[1] Like many western states, Texas rejected the English common-law rule for animal trespasses on neighbors' property.[2] When combined with the common-law rule of no duty to restrain animals from the roadway, the rejection of the common-law duty of animal owners to neighboring landowners rendered Texas "free-range" as a general rule. In *Clarendon Land, Inv. & Agency Co. v. McClelland*, 86 Tex. 179, 23 S.W. 576 (1893), this Court described the resulting rule:

> Neither the courts nor the legislature of this state have ever recognized the rule of the common law of England which requires every man to restrain his cattle either by tethering or by inclosure. . . . It is the right of every owner of domestic animals in this state, not known to be diseased, vicious, or "breachy," to allow them to run at large. . . .

*Id.* at 577–78; *see also Pace v. Potter*, 85 Tex. 473, 22 S.W. 300, 301 (1893) ("It is not contended that the rule of the common law, making it the duty of the owner of cattle to confine them to his own land, . . . was ever in force in this state. It is inapplicable to our situation and the customs and habits of the early settlers of the country, and inconsistent with our legislation in regard to fences and stock."); *Fennell v. Seguin St. Ry. Co.*, 70 Tex. 670, 8 S.W. 486, 486–87 (1888) ("There is no general law in Texas prohibiting owners from permitting their cattle to run at large. . . . [C]attle may lawfully run at large. . . ."); *Gholson v. Parrish*, 92 S.W.2d 1113, 1114 (Tex.Civ.App.—Fort Worth 1936, no writ)

1. For a description of the English common-law rules, see, e.g., *Cox v. Burbidge*, 13 C.B.(N.S.) 430, 438–39 (Eng.C.P.1863); *Heath's Garage, Ltd. v. Hodges*, [1916] 2 K.B. 370, 375–84 (Eng.C.A.); SALMOND, SALMOND ON TORTS § 127, at 494, 500 (W.T.S. Stallybrass, ed., 7 th ed.1928).

2. During the days of the Republic, the Texas Congress decided that livestock owners could allow their animals to run at large, and landowners wishing to sue for damages from trespassing livestock had to prove they had fulfilled their own duty to protect their property from at-large livestock by erecting a proper fence; otherwise, their claims were barred. *See* Act approved Feb. 5, 1840, 4 th Cong., R.S., § 2, 1840 Repub. Tex. Laws 179, 180, *reprinted in* 2 GAMMEL, THE LAWS OF TEXAS 1822–1897, at 353, 354 (Austin, Gammel Book Co. 1898).

(finding no duty to fence a public highway off from pasture lands used for grazing).

The framers of the 1876 Texas Constitution delegated to the Legislature the power to deviate from the free-range rule by passing laws regulating fences and livestock. Article 16, Section 22 of the Constitution states:

> **Fence laws.** The Legislature shall have the power to pass such fence laws, applicable to any sub-division of the State, or counties, as may be needed to meet the wants of the people.

Tex. Const. art. XVI, § 22.[3] Article 16, Section 23 states:

> **Regulation of live stock; protection of stock raisers; inspections; brands.** The Legislature may pass laws for the regulation of live stock and the protection of stock raisers in the stock raising portion of the State, and exempt from the operation of such laws other portions, sections, or counties; and shall have power to pass general and special laws for the inspection of cattle, stock and hides and for the regulation of brands; provided, that any local law thus passed shall be submitted to the freeholders of the section to be affected thereby, and approved by them, before it shall go into effect.

Tex. Const. art. XVI, § 23.

The Legislature has frequently exercised its constitutional authority in this area in an attempt to strike a balance between animal husbandry and public safety. Responding to the proliferation of automobiles, the Texas Legislature in 1935 prohibited livestock owners from permitting their animals to traverse or roam unattended on the right-of-way of a highway that had fences on both sides, and provided criminal penalties for violating the prohibition. *See* Act of May 8, 1935, 44th Leg., R.S., ch. 186, § 1, 1935 Tex. Gen. Laws 467, 467. This statute was the first Texas departure from the old English rule of nonliability for animals at large on roadways. Later, the Legislature limited the prohibition to "knowingly" permitting animals to roam at large and expanded the prohibition to all U.S. highways and state highways whether the adjacent land was fenced or not, but specifically excluded farm-to-market roads. *See* Act of May 12, 1959, 56th Leg., R.S., ch. 374, § 1, 1959 Tex. Gen. Laws 835, 835.

The Legislature has also provided for local stock laws since 1876, and has repeatedly rewritten the scope of those laws. *See* Act approved Aug. 15, 1876, 15th Leg., ch. 98, §§ 1–8, 1876 Tex. Gen. Laws 150, 150–52, *reprinted in* 8 Gammel, The Laws of Texas 1822–1897, at 986, 986–88 (Austin, Gammel Book Co. 1898) (first providing for elections to adopt local "stock laws" making livestock owners civilly liable for costs and damages if their hogs, sheep, or goats trespassed on neighbors' property, even if those neighbors failed to erect proper fences to protect their property); Act of Apr. 7, 1897, 25th Leg., R.S., ch. 87, § 1, 1897 Tex. Gen. Laws 112, 112–13, *reprinted in* 10 Gammel, The Laws of Texas 1822–1897, at 1166, 1166–67 (Austin, Gammel Book Co. 1898) (making a willful violation of one of these stock laws a penal offense, punishable by a fine); Act of May 20, 1899, 26th Leg., R.S., ch. 128, §§ 1, 14, 16, 1899 Tex. Gen. Laws 220, 220–22 (expanding the possible scope of local stock laws in some counties to include horses and cattle, and giving an injured landowner a right to civil damages); Act approved Apr. 3, 1907, 30th Leg., R.S., ch. 57, § 1, secs. 1, 20a, 20b, 1907 Tex. Gen. Laws 123, 123–24 (allowing more counties to impose stock laws that applied to horses and cattle, including Upshur County, and pre-

---

**3.** The framers added this provision in anticipation of the dramatic changes that would accompany the invention in 1873 of a new, inexpensive fencing material known as barbed wire. *See* Tex. Const. art. XVI, § 22 interp. commentary (Vernon 1993) (describ-

ing the "remarkable foresight" of framers who "envisioned that this new material would have serious repercussions on the economy of Texas," and describing the subsequent "fence-cutting war" that erupted in Texas in 1883).

scribing criminal penalties for willfully or knowingly allowing horses or cattle to run at large in those areas that adopted stock laws); Act of Apr. 27, 1987, 70 th Leg., R.S., ch. 51, § 5, 1987 Tex. Gen. Laws 123, 128 (repealing certain provisions of the laws establishing procedures for impounding trespassing animals until the animals' owners have paid the landowners' damages).

The revised compilation of laws regulating the containment of certain animals and livestock is now found at Chapter 143 of the Texas Agriculture Code. That chapter is titled "Fences; Range Restrictions;" subchapter B is titled "Local Option to Prevent Certain Animals from Running at Large;" and subchapter E is titled "Animals Running at Large on Highways."

In these subchapters, the Legislature established two exceptions to the free-range rule as it relates to horses. First, the Code permits elections to adopt local "stock laws," which provide that "a person may not permit any animal of the class mentioned in the proclamation to run at large in the county or area in which the election was held." TEX. AGRIC. CODE § 143.024. Second, the Code states that "[a] person who owns or has responsibility for the control of a horse ... may not knowingly permit the animal to traverse or roam at large, unattended, on the right-of-way of a highway." *Id.* § 143.102. The statute defines a "highway" as "a U.S. highway or a state highway in this state, *but does not include a numbered farm-to-market road.*" *Id.* § 143.101 (emphasis added). Demonstrating the Legislature's precision in defining the scope of the statute, section 143.101 goes on to add that the term "highway" "includes the portion of Recreation Road Number 255 that is located in Newton County between State Highway Number 87 and the boundary line with Jasper County." *Id.*

Texas courts have relied upon these two statutes, or their predecessors, to hold or assume that livestock owners may be liable for negligence if their animals stray onto highways,[4] or other roads in areas that have passed stock laws.[5] However, the collision in this case did not occur on a highway, but rather occurred on a farm-to-market road in an area that has not adopted a local stock law. As a result, Jackson does not have the benefit of any of the legislatively established exceptions to the free-range rule, or any of the case law that relies on those exceptions, to support her argument that Gibbs had a duty to restrain her horse. She thus requests this Court to impose a new common-law duty

---

**4.** *See Beck v. Sheppard,* 566 S.W.2d 569, 572–73 (Tex.1978) (declining to presume that a horse owner was negligent under a predecessor to Agriculture Code § 143.102 because the owner had not "knowingly" allowed his horse to roam at large, but then analyzing whether the driver produced some evidence that the owner violated a "common-law" duty to act with due care to keep his horse from escaping onto the highway); *see also Weaver v. Brink,* 613 S.W.2d 581, 583–84 (Tex.Civ. App.—Waco 1981, writ ref'd n.r.e.) (after a truck hit a cow on an interstate highway, defendant was found negligent and thus liable because he knowingly maintained cattle behind fences unable to withstand rainfalls, and he knew or should have known that the cattle had been loose several times at or near the highway).

**5.** *See Weddle v. Hudgins,* 470 S.W.2d 218, 219 (Tex.Civ.App.—Tyler 1971, writ ref'd n.r.e.) (finding "a statutory basis" for civil liability for "knowingly" allowing cattle to roam at large on a farm-to-market road where a local stock law was in place); *Hanna v. Wright,* 504 S.W.2d 779, 782–83 (Tex.Civ.App.—Tyler 1974, no writ) (because the local stock-law prohibition does not use the word "knowingly," defendant could be liable to a driver on a public road for negligently failing to maintain all gates in place in an area that had adopted a local stock law); *see also* Op. Tex. Att'y Gen. No. H–795 (1976) (a violation of a local stock law occurs if cattle are at large on a county road "with their owner's consent or through his negligence"). *Cf. Warren v. Davis,* 539 S.W.2d 907, 910 (Tex.Civ.App.—Corpus Christi 1976, no writ) (a livestock owner who apparently allowed a bull to escape through an unlocked gate in an area that had adopted a local stock law was liable to a driver on a farm-to-market road for "common-law negligence").

even though the Legislature has specifically chosen not to impose a statutory duty. We decline to do so.

Jackson argues that Chapter 143 should not be dispositive because it creates criminal offenses but does not address any civil issues. That argument ignores the cases discussed in this opinion that have established civil liability for livestock owners who violate provisions of Chapter 143. There is no provision in that Chapter, however, that establishes any responsibility to keep horses off farm-to-market roads that are not subject to a local stock law. Because there is no such provision, the civil liability Jackson seeks could not have a statutory basis. Jackson's argument also ignores the fact that the Legislature, pursuant to its constitutional authority, established a comprehensive method for dealing with livestock restrictions. In doing so, the Legislature originally included a unique system for assessing civil damages against horse owners for a violation of Chapter 143, Subchapter B. Pursuant to its policymaking authority, the Legislature repealed that civil damages provision in 1987. *See* Act of Apr. 27, 1987, 70th Leg., R.S., ch. 51, § 5, 1987 Tex. Gen. Laws 123, 128–29.

### III

■ In declining to impose a new common-law duty, we find it significant that the Legislature has, pursuant to constitutional grants of authority, established and often revisited its own scheme for determining when duties of restraint should or should not be imposed upon livestock owners. *See Graff v. Beard,* 858 S.W.2d 918, 919 (Tex.1993) ("We think it significant . . . that the legislature has considered and declined to create such a duty."). When significant and diverse public policy concerns are implicated, as in this case, careful consideration should be given to legislative pronouncements reflecting a particular public policy. *See Smith v. Merritt,* 940 S.W.2d 602, 604–05 (Tex.1997).

The Legislature has not been oblivious to safety concerns raised by roaming livestock.[6] With its policymaking authority, the Legislature has considered fence and livestock restraint laws for virtually every type of roadway over which it has jurisdiction. It is noteworthy that the Legislature has specifically excluded farm-to-market roads from such regulation. We think it unwise in this instance for the Court to erect barriers that the Legislature has declined to impose.

Similarly, citizens of Upshur County have, through separate elections, adopted local stock laws in two areas of the county. They have long had the opportunity to adopt a local stock law to prohibit horses from running at large in other parts of the county. Those citizens, who know far more about their roads and livestock than do we, apparently have deemed it unnecessary to adopt such a law for the road adjacent to Gibbs's pasture. We decline in this instance to impose upon them a duty which they have declined to self-impose.

\* \* \* \* \*

■ Accordingly, we hold that Gibbs had no common-law duty to prevent Tiny from roaming onto a farm-to-market road in an area that did not have a local stock law. We reverse the judgment of the court of appeals and render judgment that Jackson take nothing. We hereby disapprove of *Merendino v. Burrell,* 923 S.W.2d 258, 261 (Tex.App.—Beaumont 1996, writ denied), and *Miller v. Cozart,* 394 S.W.2d 22, 24 (Tex.Civ.App.—Dallas 1965, no writ), to the extent that they hold that a person who owns or is otherwise responsible for horses has a duty to prevent the horses from roaming onto a farm-to-market road that is free from a local stock law.

---

6. *See, e.g.,* Act of May 12, 1959, 56th Leg., R.S., ch. 374, § 3, 1959 Tex. Gen. Laws 835, 836 (responding to "the fact that the presence of livestock on designated highways is the cause of an appalling number of deaths and injuries").