IN THE
TENTH COURT OF APPEALS
No. 10-10-00356-CV


BRADLEY EVANS,

                                                        Appellant

 v.

CHARLES O. HENDRIX,

                                                        Appellee

From the County Court
Bosque County, Texas
Trial Court No. 4263

## MEMORANDUM  OPINION

This dispute pertains to damages sustained when a tractor-trailer driven by appellee, Charles O. Hendrix, collided with a cow allegedly owned by appellant, Bradley Evans.  On appeal, Evans challenges the trial court's $10,000 judgment in favor of Hendrix.  In three issues, Evans argues that:  (1) the evidence is legally and factually insufficient to prove a statutory claim against him; (2) if a common-law duty exists for a cattle owner to restrain his animals behind fences, the evidence is legally and factually insufficient to prove he breached this duty; and (3) Hendrix's claim for lost wages is an

improper measure of damages, and the trial court failed to segregate its damage award.[1]  We reverse and render.

## I.  BACKGROUND

During the early morning hours of March 21, 2008, Hendrix drove his tractor-trailer on State Highway 174 in rural Bosque County.  According to Hendrix, he had just left his home in Kopperl, Texas, hauling a load of military equipment to a destination in North Carolina.  Approximately three miles from his home, Hendrix drove over a hill while driving about fifty miles per hour.  As he descended the hill, Hendrix saw several cows in the highway, though it was dark at that time.  He avoided most of the cows; however, he struck one cow with the right front fender of his tractor-trailer.  As a result of the impact, the cab of Hendrix's tractor-trailer and the military cargo were damaged and the cow was killed.  Hendrix was not injured in the accident.

Following the accident, Hendrix called his wife and 911.  Hendrix's wife called the fire department.  Two firemen arrived at the scene and tried to put the cattle behind a fence, but they were unsuccessful.  Once the firemen left, Hendrix and his wife herded the cows up the "alleyway," where they found a gate open about the width of a door.  Hendrix could not recall if the gate had a lock.[2]  The cows "went right up in there" through the open gate, and Hendrix and his wife subsequently closed the gate.

---

[1] Despite this Court granting him three extensions of time, Hendrix has not filed an appellee's brief in this matter.

[2] Though he could not recall if the gate had a lock or not, Hendrix stated that he wired the gate closed with bailing wire.

Initially, Hendrix was not sure who owned the cows and suspected that several locals may be the owners. Shortly thereafter, Hendrix observed that Evans had dragged the deceased cow up a nearby street with his tractor and had cut out its back straps. Evans denied that the cow was his, but he did acknowledge that he took the cow that was hit in addition to seven other cows to auction the day of the accident. With respect to the cow that was hit, Evans stated that "the state worker" at the scene of the accident agreed that Evans could dispose of the cow and that he thought he was "doing somebody a favor."

Evans owns a little less than five acres of land near the site of the accident. He had purchased the land from his neighbor, Ms. Cantrell; however, Evans noted that the "alleyway" Hendrix drove the cattle up was actually on Ms. Cantrell's property. Evans did not have a lease with Ms. Cantrell, but she allowed Evans to run cattle on her land "to keep the grass down."

Evans recalled checking on his cows two days prior to the accident. They were pastured on the back side of his land and the back side of Ms. Cantrell's land. The gate on the "alleyway" leading to the highway was closed and chained at that time, and the fences were allegedly in good condition. Neither Evans nor another neighbor, Brandi Gregg, remembered seeing or hearing about Evans's cattle being out on the road at any time. Evans did recall seeing another neighbor's cows on the road earlier in the summer of 2008. According to Gregg, Evans's cattle had never been on her property since the gates between the Greggs' property and Evans's property were closed. Gregg

first heard about cows on the highway when a Sheriff's Deputy awoke her and her husband at 5:00 a.m. on the day of the incident.

Hendrix filed suit against Evans, alleging that Evans "failed to exercise proper supervision and control of said cattle and in turn Hendrix hit one of the cows with his 2001 Freightliner[,] tearing the passenger side off of the truck" and requesting compensation for lost wages and damages to the tractor-trailer and cargo.[3]  Evans filed an answer denying all of the allegations contained in Hendrix's petition.

On September 1, 2010, the trial court conducted a bench trial on this matter. After hearing testimony from Hendrix, Evans, and Gregg, the trial court ruled in favor of Hendrix and awarded him $10,000 in damages.  Evans filed a motion for new trial, which was denied.  He also tendered two requests for findings of fact and conclusions of law; however, no findings of fact or conclusions of law were filed.  This appeal ensued.

## II.  STANDARD OF REVIEW

When a trial court does not issue findings of fact and conclusions of law, all facts necessary to support the judgment and supported by the evidence are implied.  *See Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990).  And when, as here, the appellate record includes a clerk's record and a reporter's record, a party may challenge the trial court's implied findings of fact for legal and factual sufficiency.  *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002); *see also Roberson v. Robinson*, 768 S.W.2d

---

[3] In his bare bones petition, Hendrix did not specifically allege that Evans violated any statutory provisions.  Because the parties did not assert that Bosque County is subject to any "stock laws," we construe Hendrix's petition to allege that Evans violated section 143.102 of the agriculture code.  *See* TEX. AGRIC. CODE ANN. § 143.102 (West 2004).

280, 281 (Tex. 1989) (holding that we conduct our review of sufficiency challenges to implied findings under the same standards of review that govern sufficiency challenges to jury findings or the trial court's findings of fact).

We may sustain a legal sufficiency challenge only when: (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). In reviewing a legal sufficiency issue, we view the evidence in a light that tends to support the finding of the disputed fact and disregard all evidence and inferences to the contrary unless a reasonable fact-finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Bradford v. Vento*, 48 S.W.3d 749, 754 (Tex. 2001).

Anything more than a scintilla of evidence is legally sufficient to support the finding. *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996). When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004). More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about the existence of a vital fact. *Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co.*, 77 S.W.3d 253, 262 (Tex. 2002).

### III. ANALYSIS

Texas courts have recognized that: "It is the right of every owner of domestic animals in this state, not known to be diseased, vicious, or 'breachy,' to allow them to run at large." *Gibbs v. Jackson*, 990 S.W.2d 745, 747 (Tex. 1999); *see Fennell v. Seguin St. Ry. Co.*, 70 Tex. 670, 8 S.W. 486, 486-87 (1888) ("There is no general law in Texas prohibiting owners from permitting their cattle to run at large. . . . [C]attle may lawfully run at large . . . ."); *Gholson v. Parrish*, 92 S.W.2d 1113, 1114 (Tex. Civ. App.—Fort Worth 1936, no writ) (finding no duty to fence a public highway off from pasture lands used for grazing and noting that the plaintiff should have known the propensity of cattle to use the public highway for grazing given that the highway was not fenced). While Texas has generally been a "free range" state, the Legislature has established two exceptions. *See Goode v. Bauer*, 109 S.W.3d 788, 791 (Tex. App.—Corpus Christi 2003, pet. denied) (noting that there is no common-law duty in Texas for an owner of livestock to restrain his animals within fences and that any duty to restrain livestock is statutory). First, the agriculture code permits elections to adopt local "stock laws," which provide that "a person may not permit any animal of the class mentioned in the proclamation to run at large in the county or area in which the election was held." TEX. AGRIC. CODE ANN. § 143.024 (West 2004); *see Gibbs*, 990 S.W.2d at 749. Second, section 143.102 of the agriculture code provides that: "A person who owns or has responsibility for the control of a . . . cow, bull, steer, . . . may not knowingly permit the

animal to traverse or roam at large, unattended, on the right-of-way of a highway." TEX. AGRIC. CODE ANN. § 143.102 (West 2004); *see Gibbs*, 990 S.W.2d at 749.

Relying on these two statutory provisions, some Texas courts have held that livestock owners may be liable for negligence if their animals stray onto highways or other roads in areas that have passed stock laws. *See Gibbs*, 990 S.W.2d at 749-50 n.4 (citing *Beck v. Sheppard*, 566 S.W.2d 569, 572-73 (Tex. 1978) (declining to presume that a horse owner was negligent under a predecessor to section 143.102 because the owner had not "knowingly" allowed his horse to roam at large, but then analyzing whether the driver produced some evidence that the owner violated a "common-law" duty to act with due care to keep his horse from escaping onto the highway); *Weaver v. Brink*, 613 S.W.2d 581, 583-84 (Tex. Civ. App.—Waco 1981, writ ref'd n.r.e.) (finding defendant was negligent and thus liable because he knowingly maintained cattle behind fences unable to withstand rainfalls, and he knew or should have known that the cattle had been loose several times at or near the highway)).

In this case, Hendrix did not plead or prove that this dispute involved any local stock laws. In fact, he did not allege that Evans violated any statutory provision. Based on our review of the agriculture code and the record in this case, it does not appear that any "stock law" applies. Thus, we are left to determine Evans's liability or lack thereof within the context of section 143.102.

As noted earlier, section 143.102 requires that Hendrix prove that Evans, the alleged owner of the cattle on the highway, knowingly permitted the cattle "to traverse or roam at large, unattended, on the right-of-way of a highway." TEX. AGRIC. CODE

ANN. § 143.102. Here, there is no evidence that Evans knowingly permitted his cattle "to traverse or roam at large, unattended, on the right-of-way of a highway." *See id.* Evans admitted that his cattle were allowed on Ms. Cantrell's property "to keep the grass down," but two days prior to the accident, Evans's livestock were on the back of his property and Ms. Cantrell's property away from the highway. In addition, Evans recalled that the gate to his property was locked and chained. Furthermore, both Evans and Gregg testified that they have never seen or been told about Evans's cattle being on any roadway. Based on our review of the record, there exists a complete absence of evidence as to the "knowing" element of Hendrix's section 143.102 claim. *See id.; see also Chapman*, 118 S.W.3d at 751. Because Hendrix did not proffer any evidence as to the "knowing" element of his section 143.102 claim, and because there is no common-law duty to restrain one's livestock within fences, we conclude that the evidence supporting the trial court's judgment is legally insufficient. *See Chapman*, 118 S.W.3d at 751; *see also* TEX. AGRIC. CODE ANN. § 143.102; *Gibbs*, 990 S.W.2d at 749; *Beck*, 566 S.W.2d at 572 ("'[I]t is true, nevertheless, that such animals may often escape without fault on the part of their owners, when the latter will be guilty of no offense against the law.'") (quoting *Jackson v. Overby*, 185 S.W.2d 765, 766-67 (Tex. Civ. App.—Eastland 1945, no writ)). Accordingly, we sustain Evans's first issue.

## IV. CONCLUSION

Having sustained Evans's first issue on appeal, we reverse the judgment of the trial court and render judgment that Hendrix take nothing.[4] *See Vista Chevrolet, Inc. v. Lewis*, 709 S.W.2d 176, 176 (Tex. 1986) (per curiam) (stating the well-settled rule that legal sufficiency or "no evidence" points require rendition in favor of the appealing party).

AL SCOGGINS
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Reversed and rendered
Opinion delivered and filed August 17, 2011
[CV06]

---

[4] Because Evans's first issue affords him the greatest relief, we need not address Evans's remaining issues. *See* TEX. R. APP. P. 47.1.; *see also CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 99 (Tex. 2000); *Bradleys' Elec., Inc. v. Cigna Lloyds Ins. Co.*, 995 S.W.2d 675, 677 (Tex. 1999) (explaining that generally, when a party presents multiple grounds for reversal of a judgment on appeal, appellate courts should first address issues that would require rendition).