IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-10-00356-CV

 

Bradley Evans,

                                                                                    Appellant

 v.

 

Charles O. Hendrix,

                                                                                    Appellee

 

 

 



From the County Court

Bosque County, Texas

Trial Court No. 4263

 



MEMORANDUM  Opinion



 

This dispute
pertains to damages sustained when a tractor-trailer driven by appellee,
Charles O. Hendrix, collided with a cow allegedly owned by appellant, Bradley
Evans.  On appeal, Evans challenges the trial court’s $10,000 judgment in favor
of Hendrix.  In three issues, Evans argues that:  (1) the evidence is legally
and factually insufficient to prove a statutory claim against him; (2) if a
common-law duty exists for a cattle owner to restrain his animals behind
fences, the evidence is legally and factually insufficient to prove he breached
this duty; and (3) Hendrix’s claim for lost wages is an improper measure of
damages, and the trial court failed to segregate its damage award.[1] 
We reverse and render.

I.      
Background

 

During the early
morning hours of March 21, 2008, Hendrix drove his tractor-trailer on State
Highway 174 in rural Bosque County.  According to Hendrix, he had just left his
home in Kopperl, Texas, hauling a load of military equipment to a destination
in North Carolina.  Approximately three miles from his home, Hendrix drove over
a hill while driving about fifty miles per hour.  As he descended the hill,
Hendrix saw several cows in the highway, though it was dark at that time.  He
avoided most of the cows; however, he struck one cow with the right front
fender of his tractor-trailer.  As a result of the impact, the cab of Hendrix’s
tractor-trailer and the military cargo were damaged and the cow was killed. 
Hendrix was not injured in the accident.

Following the
accident, Hendrix called his wife and 911.  Hendrix’s wife called the fire
department.  Two firemen arrived at the scene and tried to put the cattle
behind a fence, but they were unsuccessful.  Once the firemen left, Hendrix and
his wife herded the cows up the “alleyway,” where they found a gate open about
the width of a door.  Hendrix could not recall if the gate had a lock.[2] 
The cows “went right up in there” through the open gate, and Hendrix and his
wife subsequently closed the gate.

Initially,
Hendrix was not sure who owned the cows and suspected that several locals may
be the owners.  Shortly thereafter, Hendrix observed that Evans had dragged the
deceased cow up a nearby street with his tractor and had cut out its back
straps.  Evans denied that the cow was his, but he did acknowledge that he took
the cow that was hit in addition to seven other cows to auction the day of the
accident.  With respect to the cow that was hit, Evans stated that “the state
worker” at the scene of the accident agreed that Evans could dispose of the cow
and that he thought he was “doing somebody a favor.”

Evans owns a
little less than five acres of land near the site of the accident.  He had
purchased the land from his neighbor, Ms. Cantrell; however, Evans noted that
the “alleyway” Hendrix drove the cattle up was actually on Ms. Cantrell’s
property.  Evans did not have a lease with Ms. Cantrell, but she allowed Evans
to run cattle on her land “to keep the grass down.”

Evans recalled
checking on his cows two days prior to the accident.  They were pastured on the
back side of his land and the back side of Ms. Cantrell’s land.  The gate on
the “alleyway” leading to the highway was closed and chained at that time, and
the fences were allegedly in good condition.  Neither Evans nor another
neighbor, Brandi Gregg, remembered seeing or hearing about Evans’s cattle being
out on the road at any time.  Evans did recall seeing another neighbor’s cows
on the road earlier in the summer of 2008.  According to Gregg, Evans’s cattle
had never been on her property since the gates between the Greggs’ property and
Evans’s property were closed.  Gregg first heard about cows on the highway when
a Sheriff’s Deputy awoke her and her husband at 5:00 a.m. on the day of the
incident.

Hendrix filed
suit against Evans, alleging that Evans “failed to exercise proper supervision
and control of said cattle and in turn Hendrix hit one of the cows with his
2001 Freightliner[,] tearing the passenger side off of the truck” and
requesting compensation for lost wages and damages to the tractor-trailer and
cargo.[3] 
Evans filed an answer denying all of the allegations contained in Hendrix’s
petition.

On September 1,
2010, the trial court conducted a bench trial on this matter.  After hearing
testimony from Hendrix, Evans, and Gregg, the trial court ruled in favor of
Hendrix and awarded him $10,000 in damages.  Evans filed a motion for new
trial, which was denied.  He also tendered two requests for findings of fact
and conclusions of law; however, no findings of fact or conclusions of law were
filed.  This appeal ensued.

II.   
Standard of Review

 

When a trial
court does not issue findings of fact and conclusions of law, all facts
necessary to support the judgment and supported by the evidence are implied.  See
Worford v. Stamper, 801 S.W.2d 108, 109 (Tex. 1990).  And when, as here,
the appellate record includes a clerk’s record and a reporter’s record, a party
may challenge the trial court’s implied findings of fact for legal and factual
sufficiency.  See BMC Software Belg., N.V. v. Marchand, 83 S.W.3d 789,
795 (Tex. 2002); see also Roberson v. Robinson, 768 S.W.2d 280, 281
(Tex. 1989) (holding that we conduct our review of sufficiency challenges to
implied findings under the same standards of review that govern sufficiency
challenges to jury findings or the trial court’s findings of fact).

We may sustain a
legal sufficiency challenge only when:  (1) the record discloses a complete
absence of evidence of a vital fact; (2) the court is barred by rules of law or
of evidence from giving weight to the only evidence offered to prove a vital
fact; (3) the evidence offered to prove a vital fact is no more than a mere
scintilla; or (4) the evidence establishes conclusively the opposite of a vital
fact.  King Ranch, Inc. v. Chapman, 118 S.W.3d 742, 751 (Tex. 2003).  In
reviewing a legal sufficiency issue, we view the evidence in a light that tends
to support the finding of the disputed fact and disregard all evidence and
inferences to the contrary unless a reasonable fact-finder could not.  City
of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005); Bradford v. Vento,
48 S.W.3d 749, 754 (Tex. 2001).

Anything more
than a scintilla of evidence is legally sufficient to support the finding.  Cont’l
Coffee Prods. Co. v. Cazarez, 937 S.W.2d 444, 450 (Tex. 1996).  When the
evidence offered to prove a vital fact is so weak as to do no more than create
a mere surmise or suspicion of its existence, the evidence is no more than a
scintilla and, in legal effect, is no evidence.  Ford Motor Co. v. Ridgway,
135 S.W.3d 598, 601 (Tex. 2004).  More than a scintilla of evidence exists if
the evidence furnishes some reasonable basis for differing conclusions by
reasonable minds about the existence of a vital fact.  Rocor Int’l, Inc. v.
Nat’l Union Fire Ins. Co., 77 S.W.3d 253, 262 (Tex. 2002).




 

III. Analysis

 

Texas courts have recognized that:  “It
is the right of every owner of domestic animals in this state, not known to be
diseased, vicious, or ‘breachy,’ to allow them to run at large.”  Gibbs v.
Jackson, 990 S.W.2d 745, 747 (Tex. 1999); see Fennell v. Seguin St. Ry.
Co., 70 Tex. 670, 8 S.W. 486, 486-87 (1888) (“There is no general law in
Texas prohibiting owners from permitting their cattle to run at large. . . . 
[C]attle may lawfully run at large . . . .”); Gholson v. Parrish, 92
S.W.2d 1113, 1114 (Tex. Civ. App.—Fort Worth 1936, no writ) (finding no duty to
fence a public highway off from pasture lands used for grazing and noting that
the plaintiff should have known the propensity of cattle to use the public
highway for grazing given that the highway was not fenced).  While Texas has
generally been a “free range” state, the Legislature has established two
exceptions.  See Goode v. Bauer, 109 S.W.3d 788, 791 (Tex. App.—Corpus
Christi 2003, pet. denied) (noting that there is no common-law duty in Texas
for an owner of livestock to restrain his animals within fences and that any
duty to restrain livestock is statutory).  First, the agriculture code permits
elections to adopt local “stock laws,” which provide that “a person may not
permit any animal of the class mentioned in the proclamation to run at large in
the county or area in which the election was held.”  Tex. Agric. Code Ann. § 143.024 (West 2004); see Gibbs,
990 S.W.2d at 749.  Second, section 143.102 of the agriculture code provides
that:  “A person who owns or has responsibility for the control of a . . . cow,
bull, steer, . . . may not knowingly permit the animal to traverse or roam at
large, unattended, on the right-of-way of a highway.”  Tex. Agric. Code Ann. § 143.102 (West 2004); see Gibbs,
990 S.W.2d at 749.

Relying on these two statutory
provisions, some Texas courts have held that livestock owners may be liable for
negligence if their animals stray onto highways or other roads in areas that
have passed stock laws.  See Gibbs, 990 S.W.2d at 749-50 n.4 (citing Beck
v. Sheppard, 566 S.W.2d 569, 572-73 (Tex. 1978) (declining to presume that
a horse owner was negligent under a predecessor to section 143.102 because the
owner had not “knowingly” allowed his horse to roam at large, but then
analyzing whether the driver produced some evidence that the owner violated a
“common-law” duty to act with due care to keep his horse from escaping onto the
highway); Weaver v. Brink, 613 S.W.2d 581, 583-84 (Tex. Civ. App.—Waco
1981, writ ref’d n.r.e.) (finding defendant was negligent and thus liable
because he knowingly maintained cattle behind fences unable to withstand
rainfalls, and he knew or should have known that the cattle had been loose
several times at or near the highway)).

In this case, Hendrix did not plead or
prove that this dispute involved any local stock laws.  In fact, he did not
allege that Evans violated any statutory provision.  Based on our review of the
agriculture code and the record in this case, it does not appear that any
“stock law” applies.  Thus, we are left to determine Evans’s liability or lack
thereof within the context of section 143.102.

As noted earlier, section 143.102
requires that Hendrix prove that Evans, the alleged owner of the cattle on the
highway, knowingly permitted the cattle “to traverse or roam at large, unattended,
on the right-of-way of a highway.”  Tex.
Agric. Code Ann. § 143.102.  Here, there is no evidence that Evans
knowingly permitted his cattle “to traverse or roam at large, unattended, on
the right-of-way of a highway.”  See id.  Evans admitted that his cattle
were allowed on Ms. Cantrell’s property “to keep the grass down,” but two days
prior to the accident, Evans’s livestock were on the back of his property and
Ms. Cantrell’s property away from the highway.  In addition, Evans recalled
that the gate to his property was locked and chained.  Furthermore, both Evans
and Gregg testified that they have never seen or been told about Evans’s cattle
being on any roadway.  Based on our review of the record, there exists a
complete absence of evidence as to the “knowing” element of Hendrix’s section
143.102 claim.  See id.; see also Chapman, 118 S.W.3d at 751. 
Because Hendrix did not proffer any evidence as to the “knowing” element of his
section 143.102 claim, and because there is no common-law duty to restrain one’s
livestock within fences, we conclude that the evidence supporting the trial
court’s judgment is legally insufficient.  See Chapman, 118 S.W.3d at
751; see also Tex. Agric. Code
Ann. § 143.102; Gibbs, 990 S.W.2d at 749; Beck, 566 S.W.2d
at 572 (“’[I]t is true, nevertheless, that such animals may often escape
without fault on the part of their owners, when the latter will be guilty of no
offense against the law.’”) (quoting Jackson v. Overby, 185 S.W.2d 765,
766-67 (Tex. Civ. App.—Eastland 1945, no writ)).  Accordingly, we sustain
Evans’s first issue.




 

IV. Conclusion

 

Having sustained Evans’s first issue on
appeal, we reverse the judgment of the trial court and render judgment that
Hendrix take nothing.[4] 
See Vista Chevrolet, Inc. v. Lewis, 709 S.W.2d 176, 176 (Tex. 1986) (per
curiam) (stating the well-settled rule that legal sufficiency or “no evidence”
points require rendition in favor of the appealing party).

 

AL SCOGGINS

                                                                                    Justice

 

 

Before Chief
Justice Gray,

            Justice
Davis, and

            Justice
Scoggins

Reversed and
rendered

Opinion
delivered and filed August 17, 2011

[CV06]

 









[1] Despite this Court granting him three
extensions of time, Hendrix has not filed an appellee’s brief in this matter.

 





[2] Though he could not recall if the gate
had a lock or not, Hendrix stated that he wired the gate closed with bailing
wire.

 





[3] In his bare bones petition, Hendrix did
not specifically allege that Evans violated any statutory provisions.  Because
the parties did not assert that Bosque County is subject to any “stock laws,”
we construe Hendrix’s petition to allege that Evans violated section 143.102 of
the agriculture code.  See Tex.
Agric. Code Ann. § 143.102 (West 2004).





[4] Because Evans’s first issue affords him
the greatest relief, we need not address Evans’s remaining issues.  See Tex. R. App. P. 47.1.; see also CMH
Homes, Inc. v. Daenen, 15 S.W.3d 97, 99 (Tex. 2000); Bradleys’ Elec.,
Inc. v. Cigna Lloyds Ins. Co., 995 S.W.2d 675, 677 (Tex. 1999) (explaining
that generally, when a party presents multiple grounds for reversal of a
judgment on appeal, appellate courts should first address issues that would
require rendition).