Carrollyn Sue HARLOW, Appellant,

v.

Kelly HAYES, and Triego, Inc.,
a Texas Corporation,
Appellees.

No. 07–97–0330–CV.

Court of Appeals of Texas,
Amarillo.

July 2, 1998.

Lovell & Lyle (J.R. Lovell), Dumas, Lovell, Lovell & Newsom (Joe L. Lovell, Tim Newsom), Amarillo, for appellant.

Peterson, Farris, Doores & Jones (Daniel W. Burrows), Amarillo, for appellee.

Before BOYD, C.J., and QUINN and REAVIS, JJ.

BOYD, Chief Justice.

Presenting four issues which appellant Carrollyn Sue Harlow argues show reversible error, she challenges a take-nothing judgment in favor of appellees Kelly Hayes and Triego, Inc. Those issues are whether: 1) the trial court committed reversible error in failing to render judgment for her upon an instructed verdict based upon section 143.028(b) of the Texas Agriculture Code and based upon the damage findings by the jury; 2) whether the trial court committed reversible error in not allowing her to cross-examine appellees' fence experts on section 143.028 of the Texas Agriculture Code and on fence regulations promulgated by the United States Department of Agriculture; 3) and 4) whether the jury findings on physical pain, mental anguish and physical impairment are against the great weight and preponderance of the evidence and in irreconcilable conflict with its damage findings on lost wages. Concluding no reversible error exists, we affirm the judgment of the trial court.

This action arose because of a collision on U.S. Highway 287 between an automobile in which appellant was a passenger and a horse owned by Hayes. The accident occurred between 7:00 p.m. and 7:30 p.m. on January 19, 1991. The horse escaped from a pasture controlled by appellees, which is enclosed by a single wire electric fence and some distance from the highway. Hayes testified that he checked the fence daily and it was working properly when he left the pasture for the day sometime between 5:00 and 5:30 p.m.

However, Hayes averred, the next morning he found a gated portion of the fence down and not operative. He offered evidence that showed tread marks of an unknown vehicle in the mud that had apparently crashed into the fence after he had left for the day on January 19th. This breach caused the fence not to work properly allowing the horse to escape. In contrast, it was appellant's theory that the horse had jumped the fence and wandered down the country road and onto the highway.

During the course of the trial, the trial court originally instructed the jury that appellees' single wire electric fence was "insufficient under Texas Agricultural [sic] Code Section 143.028" and that they "failed to maintain a sufficient fence, which was a proximate cause of the collision." However, despite this instructed verdict, the trial court subsequently decided that section 143.028 was not applicable in this case and never entered judgment based upon its instruction. Instead, at the conclusion of the presentation of evidence, the trial judge submitted a question to the jury inquiring whether either or both appellees failed "to restrain the horse in question from running at large or permit the horse in question to run at large, which was a proximate cause of the collision in question." He also submitted a query as to whether or not either or both appellees knowingly permitted the horse to traverse or roam at large unattended on the highway which was a proximate cause of the collision.

Accompanying the submitted questions, the court instructed the jury on proximate cause and new and independent cause. Although the jury found appellant had suffered damages, it returned negative answers to each of the causation issues. Subsequent to receipt of the jury verdict, the court rendered the take-nothing judgment giving rise to this appeal.

■ In support of her first point, appellant argues that the single wire electric fence was insufficient under section 143.028 of the Agriculture Code. She contends that this section establishes the minimum requirements for enclosures built to confine livestock in a county in which a stock law has been adopted. On the other hand, appellees contest this conclusion and say that the section is not applicable to this lawsuit. In relevant part, the section provides:

§ 143.028. Fences

(a) A person is not required to fence against animals that are not permitted to run at large. Except as otherwise provided by this section, a fence is sufficient for purposes of this chapter if it is sufficient to keep out ordinary livestock permitted to run at large.

(b) In order to be sufficient, a fence must be at least four feet high and comply with the following requirements:

(1) a barbed wire fence must consist of three wires on posts no more than 30 feet apart, with one or more stays between every two posts;

(2) a picket fence must consist of pickets that are not more than six inches apart;

(3) a board fence must consist of three boards not less than five inches wide and one inch thick; and

(4) a rail fence must consist of four rails.

Tex. Agric. Code Ann. § 143.028(a) & (b) (Vernon 1982).

■ The purpose of statutory construction is always to ascertain legislative intent. *Mitchell Energy Corp. v. Ashworth,* 943 S.W.2d 436, 438 (Tex.1997); *City of Mason v. West Texas Utilities Co.,* 150 Tex. 18, 237 S.W.2d 273, 278 (1951). Where the intent is clear, it will be given effect, even if the result appears to the courts to be harsh, or even ill-advised. *Turner v. Cross,* 83 Tex. 218, 18 S.W. 578, 579 (1892). Every word in a statute must be presumed to have been used for a purpose and every word excluded for a purpose. *Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535, 540 (Tex.1981).

In the Code Construction Act,[1] the Legislature, to aid in ascertaining its intent, has provided that words and phrases shall be read in context and construed following the rules of grammar and common usage. Texas Gov't Code Ann. § 311.011(a) (Vernon 1988). Furthermore, it is presumed that the statute is constitutional, that the entire statute is intended to be effective,

1. Texas Gov't Code Ann. §§ 311.001— 312.013 (Vernon 1988 & Supp.1998).

and that a just and reasonable result feasible of execution is intended. Texas Gov't Code Ann. § 311.021(1)-(4) (Vernon 1988).

It is undisputed that after an election called for the purpose of determining whether a stock law should be adopted in Sherman County, such a law was adopted and became effective 30 days after May 22, 1935. Sherman County, Tex., Ordinance for Restraining Horses, Mules, Jacks, Jennets, and Cattle from Running At Large (May 22, 1935). The law prohibited horses, mules, jacks, jennets and cattle from running at large within the territorial limits of the county. *Id.*

Chapter 143 of the Agriculture Code is entitled "Fences; Range Restrictions." Tex. Agric. Code Ann. §§ 143.001–143.123 (Vernon 1982 & Supp.1998).[2] Subchapter A is entitled "Fencing of Cultivated Land." Section 143.001 provides that, except for an area in which a stock law has been adopted, "each farmer or gardener shall make a sufficient fence around cleared land in cultivation that is at least five feet high and will prevent hogs from passing through." Section 143.002 provides that a person may not build, join, or maintain around cleared land in cultivation more than three miles lineal measure of fence running the same general direction without a gate that is at least 10 feet wide and is unlocked. Former sections 143.003 through 143.005 dealt with trespass by livestock onto fenced property, the impoundment of the trespassing stock, and liability for injury to crops from trespassing livestock.

Subchapter B is entitled "Local Option to Prevent Certain Animals From Running at Large." Sections 143.021 through 143.027 deal with elections to prohibit stock running at large as well as elections to repeal that prohibition if one has been electorally adopted. We have set out section 143.028 in detail above. Former sections 143.029 through 143.032 dealt with impoundment of animals not permitted to

run at large, and the fees and penalties that would be incurred because of the trespassing animal. Section 143.033 deals with the liability of a person "whose fence is insufficient under this subchapter" if they maim, wound, or kill the trespassing animal. Section 143.034 provides penalties for persons who knowingly turn out, allow, or permit an animal not allowed to run at large to do so.

■ In our interpretation, we bear in mind the long established rule in this state that in the absence of statutory provisions to the contrary, an owner of domestic animals is permitted to allow them to run at large "unless they are known to him to be vicious in the matter of fence breaking or otherwise, or that they are afflicted with infectious or contagious diseases." *Hollingsworth v. King*, 810 S.W.2d 772, 776 (Tex.App.—Amarillo 1991), *writ denied per curiam*, 816 S.W.2d 340 (Tex.1991) (citing *Molton v. Young*, 204 S.W.2d 636, 638 (Tex.Civ.App.—Amarillo 1947, no writ)). *See also Clarendon Land, Investment & Agency Co. v. McClelland*, 89 Tex. 483, 35 S.W. 474 (1896). Thus, as we have observed, foremost among the rules of interpretation which we must apply is that of determining the legislative intent. Viewing the portions of Chapter 143 still in effect leads us to conclude that, in addition to providing for the adoption of stock laws to prevent the running of stock at large, the legislative intent was to require and specify the types of fences that would be required to keep livestock that are permitted to run at large off of property, particularly cultivated property. In other words, when the open-range doctrine applies, a landowner is required to fence out particular livestock with a sufficient fence; otherwise, the landowner would not be able to recover from the livestock-owner for any property or crop damage done by the livestock.

**2.** All later references to section numbers are to those sections contained within Chapter 143 of the Agriculture Code unless specified otherwise.

As support for this conclusion, we note that the first sentence of section 143.028(a) specifically provides that "a person is not required to fence against animals that are not permitted to run at large." The second sentence provides that "a fence is sufficient for the purposes of this chapter if it is sufficient to keep out ordinary livestock permitted to run at large." It then goes on in subsection (b) to describe certain types of fences that would be legally sufficient to keep stock out. Clearly then, this section is only intended to apply to situations in which no type of stock law has been adopted, in which animals such as horses and cattle are permitted to run at large, and when the landowner must fence to keep them out. That is not the type of situation before us and we can only conclude that section 143.028 is not applicable here.

Our conviction that this interpretation is correct is further strengthened by the fact that sections 143.101 through 143.104 specifically deal with U.S. and State Highways and prohibit animals from running at large on them. Sections 143.106 through 143.108 provide for enforcement of this prohibition. Had the Legislature intended chapter 143 to apply to circumstances requiring livestock-owners to fence in their animals, this subsection would have been the logical place for describing the type of fences required to keep livestock off of the highways. Rather than doing so, the Legislature simply provided that a person owning or having responsibility of animals such as horses "may not knowingly permit the animal to traverse or roam at large, unattended, on the right-of-way of a highway," and prescribed the penalty for allowing an animal to do so in sections 143.102 and 143.108.

As authority for her argument that section 143.028 is applicable here, appellant relies primarily upon *Ogletree v. Evans*, 248 S.W.2d 804 (Tex.Civ.App.—Beaumont 1952, writ ref'd n.r.e.). We do not consider that case persuasive. The primary question before that court was whether or not the defendant had acquired title by adverse possession. It was in that context that the court made a peripheral reference to the progenitor statutes to those in question here. The court explained that those statutes "have to do with impounding of stock by the owners of enclosure and the collection of damages from owners of trespassing stock," not with the requirements of acquiring title by adverse possession. *Id.* at 806. Indeed, even the court's rather vague reference to the term "trespassing stock" in that case seems to refer to instances in which an owner was obligated to build a fence to keep stock out.

■ Moreover, even assuming arguendo that section 143.028 was applicable here, a reasonable reading of the statute leads us to conclude that the Legislature did not attempt to make an exclusive list of the types of fences that would be "sufficient" under the statute. Rather, a reasonable interpretation of section 143.028(a) would seem to be that in circumstances where a fence was required, the overall requirement is that a fence must be sufficient to keep out ordinary livestock allowed to run at large. Subsection (b) merely sets out the requirement that if a fence is one of the specific types mentioned in subdivisions 1 through 4, it must meet certain requirements to be considered a fence "sufficient to keep out ordinary livestock." It hardly seems reasonable to suppose that the Legislature, for example, would have intended that absolutely no other type of fence other than those mentioned would be considered "sufficient" under the statute. *See* § 311.021(3). For each and all of the foregoing reasons, we hold that section 143.028 is not applicable to this suit.

■ Furthermore, regarding the trial court's original instructed verdict concerning section 143.028, a trial court has discretion to change its mind about interlocutory orders so long as that change does not deprive a party of the opportunity to litigate the determinative issues in the case. *See Bi-Ed, Ltd. v. Ramsey*, 935 S.W.2d 122, 123–24 (Tex.1996); *Elder*

*Const., Inc. v. City of Colleyville,* 839 S.W.2d 91, 92 (Tex.1992). In this case, determinative liability issues were submitted to the jury and appellant had the opportunity to litigate them. Thus, under this record, the trial court did not commit reversible error in failing to render judgment based upon the instructed verdict.

In conclusion, since section 143.028 is not applicable as a matter of law and the trial court did not abuse its discretion in overruling its interlocutory order, appellant's first issue contention is overruled.

Appellant's second issue deals with the exclusion of cross-examination testimony of appellees' fence experts regarding section 143.028 and fence regulations promulgated by the United States Department of Agriculture. In that connection, it is well established that an expert witness may be cross-examined by asking whether or not he or she agrees or disagrees with statements contained in treatises, books, and scientific journals. However, that type of cross-examination right is limited to publications upon which the expert has relied or recognizes as authoritative. *See Carter v. Steere Tank Lines, Inc.,* 835 S.W.2d 176, 182 (Tex. App.—Amarillo 1992, writ denied).

The witnesses called by appellees who expressed opinions about the adequacy of the fence were Hayes, Robert Owen (Owen), Robert Harris (Harris), and Jack Haile (Haile). Because we have decided that the fencing standards explicated in section 143.028 are not applicable here, the trial court did not reversibly err by denying cross-examination about those specific standards. Moreover, with regard to the federal guidelines, Hayes testified that he was not familiar with the guidelines of the Natural Resources Code. Owen said he had never seen the Natural Resources Code guidelines. When Owen was asked if it was important for a jury in making its decision "to give some consideration to what the government has published on this issue," he replied that he was not sure whether "any of these people [from the

government] ever saw a horse," and he did not think that "these people" would have any better opinion regarding sufficient fences than "some of us boys that have raised horses all our life."

Haile testified that he was not aware that the USDA had fencing standards and averred that any such standards would not be important to him. Harris, who was the County Extension Agent for Moore County, said he recognized the USDA and the Natural Resources Conservation Service as authoritative. Yet, he had not seen nor was he familiar with the Natural Resources guidelines. He did acknowledge that if a farmer or rancher was involved with the Conservation Service, they would have to follow those fencing standards. He also acknowledged that those standards could "be looked towards" by farmers and ranchers in deciding what a sufficient fence would be. However, in deposition testimony tendered by appellant, Harris did not recognize the USDA Conservation standards as definitive.

Clearly, with the possible exception of Harris, none of appellees' expert witnesses recognized the USDA Conservation Service's fencing standards as authoritative. We do not believe that when viewed as a whole, Harris ever said he recognized the federal standards as authoritative. However, even assuming arguendo the trial court erred in excluding his cross-examination with regard to the standards, the excluded examination would not present an error of sufficient magnitude that it probably caused the rendition of an improper judgment or prevented appellant from properly presenting her case. *See* Tex. R.App. P. 44.1(a); *Webb v. Jorns,* 530 S.W.2d 847, 857 (Tex.Civ.App.—Fort Worth 1975, writ ref'd n.r.e.) (citing to former Rule 434 of the Texas Rules of Civil Procedure). Inasmuch as the other witnesses did not recognize the federal standards as authoritative, no error is shown in the exclusion of their cross-examination on that point. Appellant's second

issue does not show reversible error and is overruled.

Because of our holdings above, and because of the jury findings on the liability issues, it is not necessary to discuss appellant's last two issues. Accordingly, the judgment of the trial court must be, and is, affirmed.