John L. KENNAMER, Individually, and John L. Kennamer & Mora Kennamer d/b/a K Bar Land & Cattle Company, Appellants,

v.

The ESTATE OF John Alwin NOBLITT, Deceased, Charles R. Noblitt, Jr., Individually and as Administrator of the Estate of John Alwin Noblitt, Deceased, and Joann Jones, Individually and as Heir of the Estate of John Alwin Noblitt, Deceased, Appellees.

No. 01–08–00134–CV.

Court of Appeals of Texas, Houston (1st Dist.).

July 24, 2009.

■■■

Chris R. Lay, Law Office of Robert D. Clements, Jr. and Associates, Robert D. Clements Jr., Robert D. Clements, Jr. & Associates, Otto D. Hewitt III, Hewitt Law Firm, Alvin, TX, for Appellants.

Mary Peter Cudd, Floyd H. Christian, Lynn J. Klement, Law Office of Lynn J. Klement, Angleton, TX, Bart Alan Rue, Fort Worth, TX, for Appellees.

Panel consists of Chief Justice RADACK and Justices HIGLEY and NUCHIA.*

## OPINION

LAURA CARTER HIGLEY, Justice.

Appellant, John L. Kennamer, was driving an all-terrain vehicle ("ATV") on his ranch when he was attacked and injured by a cow, allegedly owned by appellees, the Estate of John Alwin Noblitt, Deceased, Charles R. Noblitt, Jr., Individually and as Administrator of the Estate of John Alwin Noblitt, Deceased, and Joann Jones, Individually and as Heir of the Estate of John Alwin Noblitt, Deceased. Appellants, Kennamer, Individually, and Kennamer & Mora Kennamer d/b/a K Bar Land & Cattle Company, sued appellees for negligence, alleging that appellees had failed to keep "their wild cows" on their property and had failed to warn Kennamer of the "wild cows and the injuries the wild cows could inflict." Appellees moved for summary judgment on the ground that the evidence conclusively showed that they did not own the cow, which the trial court granted.

 Our memorandum opinion in this cause issued on January 8, 2009. Appellants timely moved for rehearing to the panel and for en banc reconsideration to the Court. On March 3, 2009, the Court denied appellants' rehearing motion, but their motion for en banc reconsideration remained pending, thus maintaining our plenary power over the appeal. *See* TEX. R.APP. P. 19.1(b); *see also City of San Antonio v. Hartman,* 201 S.W.3d 667, 670–71 (Tex.2006). During that plenary period, we now *sua sponte* withdraw our opinion and judgment issued January 8, 2009 and issue this opinion and judgment in its stead. *See Univ. of Tex. Health Sci. Ctr. at Houston v. Gutierrez,* 237 S.W.3d 869, 870 (Tex.App.-Houston [1st Dist.] 2007, pet. denied). Nonetheless, our disposition remains unchanged. Appellants' motion for en banc reconsideration is rendered moot by our withdrawing and reissuing our opinion. *Cf. Brookshire Bros. v. Smith,* 176 S.W.3d 30, 41 n. 4 (Tex.App.-Houston [1st Dist.] 2004, pet. denied) (op. on reh'g) (noting that motion for en banc reconsideration becomes moot when mo-

---

* The Honorable Samuel N. Nuchia, who was a member of the panel when this case was submitted on November 25, 2008, retired from the First Court of Appeals on January 1, 2009. Retired Justice Nuchia continues to participate in the disposition of this proceeding by assignment.

tion for rehearing is granted and new opinion and judgment issue).[1]

In what we construe as one issue, appellants contend that the trial court erred by granting summary judgment in favor of appellees.

We affirm.

## Background

John A. Noblitt, now deceased, raised cattle on his ranch in Brazoria County, Texas. Alan Fitzgerald grew up on an adjoining ranch. For nearly 50 years, Noblitt enlisted Fitzgerald's help to work his cattle. When Noblitt became unable to take care of his cattle, Fitzgerald took over. In 2001, Fitzgerald began running his own cattle with Noblitt's herd.

After Noblitt's death in 2003, Fitzgerald continued to look after the cattle. In April 2004, some of the cattle escaped onto another adjoining ranch, which was owned by appellant, Kennamer. Fitzgerald went to Kennamer's ranch and, with the assistance of the sheriff's department, identified Fitzgerald's cattle and hauled them home. Fitzgerald contacted Noblitt's daughter, Sue, about retrieving Noblitt's cattle, and Sue insisted that she would retrieve the cattle herself.

Five months later, on September 12, 2004, Kennamer was working on his ranch with James Sutton. The men were each driving ATVs and checking fences. Sutton was working on one side of the pasture, and Kennamer was working on the other. At some point, Sutton looked up and saw Kennamer racing toward the woods on his ATV with a red cow chasing after him. Sutton saw the cow hit the back of the ATV and flip it up, throwing Kennamer off. Sutton found Kennamer lying unconscious and not breathing. Sutton performed CPR and Kennamer was "life-flighted" to the hospital. Kennamer survived, but sustained severe injuries to his head, chest, and legs.

Appellants sued Noblitt's estate for negligence, asserting that Kennamer was "viciously attacked by wild cows belonging to [Noblitt]," and that his injuries, for which he sought $2M in damages, were proximately caused by the negligence of appellees in failing to keep "their wild cows [sic]" on their property and failing to warn Kennamer of the "wild cows and the injuries these wild cows could inflict."

According to Kennamer, the cow that attacked him was branded with an "upside down U." According to Fitzgerald and area ranchers, Fitzgerald's, and not Noblitt's, cows were branded with a "U."

Appellees moved for summary judgment on the ground that they did not own the "attacking cow." To their motion, appellees appended as their evidence excerpts of the deposition testimony of Kennamer; Fitzgerald; Sutton; Kenny Shaw, an area rancher who knew Noblitt; and Milton Sims and Johnny Hobbins, who knew Noblitt and were familiar with his cattle.

In their response to the motion for summary judgment, appellants contended that "[t]he only issue at bar is the relationship between Noblitt and the cow," that the evidence on the issue of ownership is con-

1. After appellants' motion for en banc reconsideration was rendered moot by the withdrawal of our January 8, 2009 opinion and judgment, during the Court's plenary power over this case, and before today's opinion and judgment had issued, en banc consideration of the case was requested from within the Court. *See* Tex.R.App. P. 41.2(c). A majority of the Justices of the Court voted to deny en banc consideration of the case. *See id.* Along with the Court's opinion that issues today, Justice Keyes, joined by Justice Sharp, issues an opinion dissenting from the denial of en banc consideration. *See* Tex.R.App. P. 47.5.

flicting, and that therefore a fact issue precludes summary judgment. To their response, appellants appended excerpts of the deposition testimony of Fitzgerald, Sutton, and Sims.

On February 1, 2008, the trial court granted summary judgment in favor of appellees. This appeal ensued.

## Summary Judgment

Appellants contend that the trial court erred by granting summary judgment in favor of appellees because a genuine issue of material fact exists that precludes summary judgment, namely, the ownership of the cow.

### A. Standard of Review

We review a trial court's ruling on a motion for summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex.2005). A summary judgment under Rule of Civil Procedure 166a(c) is properly granted only when a movant establishes that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999). A defendant moving for summary judgment must either (1) disprove at least one element of the plaintiffs' cause of action or (2) plead and conclusively establish each essential element of an affirmative defense to rebut the plaintiffs' cause. *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex.1995).

First, the movant must conclusively establish its right to judgment as a matter of law. *See MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex.1986). A matter is conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex.2005).

Then, if the movant conclusively establishes its right to judgment, the burden shifts to the non-movant to respond with evidence raising a genuine issue of material fact that would preclude summary judgment. *See Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222–23 (Tex.1999) (explaining that non-movant has no burden to respond to summary judgment motion unless movant conclusively establishes its cause of action or defense). In deciding whether there is a disputed material fact precluding summary judgment, evidence favorable to the non-movant will be taken as true, every reasonable inference must be indulged in favor of the non-movant, and any doubts must be resolved in favor of the non-movant. *Dorsett*, 164 S.W.3d at 661.

### B. Applicable Law

█ Here, appellants sued appellees for negligence. To prevail on a negligence cause of action, a plaintiff must show proof of (1) a legal duty owed by one party to another, (2) a breach of that duty, and (3) damages proximately caused by that breach. *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex.2002).

Appellees asserted in their motion for summary judgment that the evidence negated the elements of duty and breach. Whether appellees breached a legal duty owed to appellants depends on the duty, if any, that the law imposes on appellees.

█ Texans do not have a common-law duty to fence in their livestock. *Gibbs v. Jackson*, 990 S.W.2d 745, 747–50 (Tex.1999); *Harlow v. Hayes*, 991 S.W.2d 24, 27 (Tex.App.-Amarillo 1998, pet. denied). Any duty to restrain livestock is statutory. *Gibbs*, 990 S.W.2d at 747–48, 750 (examining stock owners' duties to contain livestock and expressly disapproving of cases holding that person who owns or is otherwise responsible for livestock has duty to

prevent livestock from roaming, in absence of local stock law); *Goode v. Bauer*, 109 S.W.3d 788, 791 (Tex.App.-Corpus Christi 2003, pet. denied). "In those counties that have adopted local stock laws, *an owner of livestock* may not permit the stock to run at large under section 143.074 of the agriculture code...." *Goode*, 109 S.W.3d at 791 (citing Tex. Agric. Code Ann. § 143.074) (Vernon 2004)) (emphasis added). "Section 143.074 is not a penal statute; rather, it creates a duty on the keepers of livestock in counties that have adopted local stock laws to restrain their cattle. It is designed to protect all persons and property from wandering animals...." *Id.* at 792; *see also Gibbs*, 990 S.W.2d at 750 (recognizing that Chapter 143 establishes civil liability for livestock owners who violate its provisions).

 Hence, any duty appellees owed with regard to the cow in this case arises under statute.[2] Ownership or control of the livestock at issue is a sub-element of duty. *See Koepke v. Martinez*, 84 S.W.3d 393, 396 (Tex.App.-Corpus Christi 2002, pet. denied). The non-existence of a duty ends the inquiry. *Van Horn v. Chambers*, 970 S.W.2d 542, 544 (Tex.1998).

### C. Analysis

 Here, appellants alleged in their petition that

> [t]he attack of the wild cows [sic] *owned by Defendants* and resulting serious, permanent and disabling injuries to the Plaintiffs were each proximately caused by the negligence, ordinary and/or gross negligence, of the Defendants ... including but not limited to: (1) In failing to keep *their wild cows* on Defendants'

property; (2) In failing to warn Plaintiffs of the wild cows and the injuries these wild cows could inflict; and (3) In other particulars to be shown by proper amendment prior to trial.

(Emphasis added.) There is not an allegation that appellees controlled the cow at issue other than through ownership.

 In their motion for summary judgment, appellees contended that the evidence showed that they did not own the cow, which negated the duty element of appellants' negligence claim. *See Cathey*, 900 S.W.2d at 341. As evidence to support their contention, appellees appended to their motion excerpts of the deposition testimony of Kennamer, Sutton, Fitzgerald, Sims, and Shaw, which they incorporated into their motion by reference. Depositions are proper summary judgment evidence when referred to or incorporated into a motion for summary judgment. *See Rangel v. Lapin*, 177 S.W.3d 17, 21 (Tex. App.-Houston [1st Dist.] 2005, pet. denied).

Kennamer testified that the cow that attacked him was "solid red" in color, was "Brahman and possibly Hereford" in breeding, had horns at least 18 inches in length; and "had some ear notches that were common to Noblitt cattle"—which he "believe[d]" were three or four notches on the outer rim of the left ear, but "could have been" more. Kennamer also testified that he "didn't really use the marks to identify the cow." Kennamer testified that the cow that attacked him was branded with "kind of an upside down U." When asked how he knew it was Noblitt's cow, Kennamer responded that it was by "just observing the cow for, hell, 10 years, I guess," and that "[i]t's just the same way

---

**2.** The dissent expresses concern that we have "gratuitously" pointed to statutory law that neither party raises. We are not at liberty to apply anything other than the law that governs the issue before us. To do otherwise

"would empower parties to usurp the courts' constitutional role in our judicial system." *Zapata County Appraisal Dist. v. Coastal Oil & Gas Corp.*, 90 S.W.3d 847, 852, 853 n. 1 (Tex.App.-San Antonio 2002, pet. denied).

you would identify your son. You'd recognize him."

Kennamer first testified that he had seen the cow for several years and knew the cow, but that he had never complained to Noblitt about her. He later testified that the cow "didn't come across the fence while [Noblitt] was alive." Kennamer also testified that there were no breaks in the fencing between Noblitt and Kennamer; rather, the cow had been in another pasture on Kennamer's own property and, on the day of the incident, there was a break in Kennamer's own cross-fencing, which allowed the cow to get into the pasture with Kennamer and injure him.

Sutton testified by deposition that, on the day of the incident, he and Kennamer were on ATVs, checking fences. Sutton was working on one side of the pasture, while Kennamer worked on the other. At some point, Sutton looked up and saw Kennamer racing toward the woods on his ATV with a red cow chasing him. Sutton saw the cow hit the back of the ATV and flip it up, throwing Kennamer off. Sutton found Kennamer lying unconscious and not breathing. Sutton testified that the cow was "ribby" and had "two real high horns on her," about 12 inches long on each side.

Sutton testified that he did not know whose cow it was or from where it came. After the incident, Sutton found a break in the common fence between Kennamer's land and a wildlife preserve, known as "Hunt Woods," that adjoined Kennamer's land. Sutton testified that this was the only downed fence that he found and that he had frequently seen cattle on the government land.

Fitzgerald's deposition testimony was that he had been running his own cattle with Noblitt's herd on Noblitt's ranch since 2001. Fitzgerald described specific events that had occurred while working the herd, and Fitzgerald explained that some of the cattle could get aggressive and were dangerous but that "you always got [sic] danger in cattle." Fitzgerald testified that he and Noblitt would sell the unmanageable cattle at auction as they could catch them. Fitzgerald reported that, on one occasion, one of Noblitt's cows (other than the one at issue) had injured a man on horseback at an auction barn. Fitzgerald noted that he had called the auction barn and warned them about the cow.

Fitzgerald testified that, after Noblitt's death in 2003, Fitzgerald continued to take care of the herd until April 2004, when they "got out and got into Kennamer's." When the cattle got out, Kennamer called Fitzgerald to retrieve them. Fitzgerald went to Kennamer's ranch with sheriff's deputies, who examined ear tags, loaded up Fitzgerald's cattle, and brought them home. Fitzgerald said that Noblitt's cattle were left on Kennamer's property and that he contacted Noblitt's daughter, Sue, about retrieving them. He told Sue that the cattle could get aggressive, but Sue insisted that she would retrieve them herself.

Fitzgerald testified that Noblitt had some red Brangus crossbreds, that some had horns, and that none of them were branded. Noblitt typically, although not always, used a single notch on the bottom of the left ear and tipped the right. Fitzgerald further testified that his own cattle were red in color, had horns, and were branded with "a walking U right behind the left shoulder," which is a "U" with two little lines coming down from it." Fitzgerald testified that "[i]f [the cow] had a Walking U on her, it was mine."

Shaw also testified that Fitzgerald branded his own cattle with a "U with two little legs under it" and that Noblitt did not brand his herd. Shaw testified that Kennamer's description of the cow that

attacked him as "solid red with horns that were 18 inches or longer on each side" did not describe any of Noblitt's cattle. Shaw further testified that Noblitt's cattle were healthy and in good condition.

Hobbins also testified that Fitzgerald branded his cattle with a "U," that Noblitt did not brand his cattle, and that Kennamer's description of a cow with a "U" brand would be Fitzgerald's cow. Hobbins further testified that Noblitt did not own any solid red cows.

Sims testified that Noblitt had a "hundred and some odd head of cattle"; that some were some "partly" red in color, but none were solid red; that some had horns, but that most of them were not over six or eight inches because they had been tipped; and that Noblitt did not brand his cattle.

Regarding the scope of review for summary judgments, *City of Keller* instructs that "there is only one standard—a reviewing court must examine *the entire record* in the light most favorable to the nonmovant, indulging every *reasonable* inference and resolving any doubts against the motion." 168 S.W.3d at 824 (emphasis added). We "do *not* disregard the evidence supporting the motion," because if we did, "all summary judgments would be reversed." *Id.* at 824–25.

Here, considering all the evidence presented by the movant in the light that supports the non-movant, as we must, we accept as true the testimony of the non-movant, Kennamer, that the cow was red; that she had horns of 12–18″ in length, as Kennamer and Sutton testified; that she had three, four, or more ear notches; and that she was thin, ribby, and aged. We accept as true Kennamer's testimony that the cow that attacked him was branded with "kind of an upside down U."

We cannot ignore, however, the movant's evidence that Fitzgerald testified that his own cows had escaped onto Kennamer's property five months prior; that his own cows are branded with a "walking U," which is a "U" with two little lines coming down from it"; and admitting that, if the cow was branded with a "U," she was his cow. *See id.* at 822 (explaining that we may not disregard evidence that allows only one inference).

Appellees' burden, as the movant, was to conclusively establish their right to judgment as a matter of law. *See MMP, Ltd.,* 710 S.W.2d at 60. Because Fitzgerald admitted, against his own interest, that the cow at issue belonged to him, we conclude that reasonable people could not differ in the conclusion to be drawn from the evidence, that is, that Fitzgerald owned the cow. *See City of Keller,* 168 S.W.3d at 816 ("A matter is conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence.").

Once, appellees negated the duty element of appellants' claim and established their right to judgment, the burden shifted to appellants to respond with controverting evidence raising a genuine issue of material fact that would preclude summary judgment. *See Rhone–Poulenc, Inc.,* 997 S.W.2d at 222–23. In their response to appellees' motion for summary judgment, appellants contended that a material fact issue regarding the ownership of the cow precluded summary judgment. Appellants appended excerpts of the deposition testimony of Sutton, Fitzgerald, and Sims.

Appellants first contended that evidence giving rise to an issue of material fact concerning whether appellees owned the cow at issue was "whether the cow that attacked Kennamer was or was not branded." As discussed above, we accept as true the testimony of Kennamer, the nonmovant, that the cow was branded. Examining the entire record, however, the

evidence also shows that the brand was that of Fitzgerald. Appellees presented no controverting evidence that the brand on the cow at issue was that of Noblitt. *See e.g.*, TEX. AGRI.CODE ANN. § 144.043 (Vernon 2004) (stating, "Any dispute about an earmark or brand shall be decided by reference to the mark and brand records of the county clerk, and the mark or brand of the oldest date prevails."). The dissent focuses on fact issues such as whether the cow was red. The relevant inquiry is not whether the summary judgment proof generally raises fact issues, but whether the summary judgment proof establishes as a matter of law that there is not a genuine issue of material fact. *Rhone–Poulenc, Inc.*, 997 S.W.2d at 223.

Next, appellants point to Kennamer's testimony that he had, on a prior occasion, seen the cow that attacked him on Noblitt's ranch, as evidence giving rise to a genuine issue of material fact. The uncontroverted evidence, however, is that Fitzgerald's cattle had also been running on Noblitt's ranch since 2001.

Appellants next point to evidence that Noblitt's cattle had come onto Kennamer's ranch months before the incident, as evidence giving rise to a genuine issue of material fact. The uncontroverted evidence shows, however, that Noblitt's *and Fitzgerald's* cattle were on Kennamer's property in April 2004. In addition, evidence that Noblitt's cattle came onto Kennamer's ranch *five months* prior to the incident at issue is not evidence that the cow that attacked Kennamer on this day was Noblitt's cow. Moreover, Kennamer himself testified that the only fence down was his own cross-fence, and Sutton, who testified on Kennamer's behalf, stated that the only fence down was between Kennamer's land and the adjoining wildlife preserve, where cattle were known to be.

Finally, appellants point to Fitzgerald's testimony that some of the cows were aggressive and dangerous, as evidence giving rise to a genuine issue of material fact. The evidence shows that, although Fitzgerald testified that some of the cattle could get aggressive and were dangerous, he explained that "you always got [sic] danger in cattle." Evidence that *other* cows in *other* circumstances at some point in the past acted aggressively—or acted in conformity with how cows are generally expected to behave—is not evidence that the cow in this case belonged to Noblitt.

We disagree that this evidence rises to a level that creates a genuine issue of material fact. We conclude that, as a matter of law, appellees have carried their burden to disprove at least one element of appellants' cause of action, namely, duty. *See Cathey*, 900 S.W.2d at 341. Accordingly, the rendition of summary judgment on this ground was proper. *See* TEX.R. CIV. P. 166a(c); *KPMG Peat Marwick*, 988 S.W.2d at 748.

Accordingly, we overrule appellants' sole issue.

### Conclusion

We affirm the judgment of the trial court.

Appellants moved for rehearing to the panel and for en banc reconsideration to the Court. *See* TEX.R.APP. P. 49.1, 49.7.

The panel denied the motion for rehearing addressed to it, leaving pending the motion for en banc reconsideration, which maintained the Court's plenary power over the case. *See* TEX.R.APP. P. 19.1, 49.3.

During the pendency of the motion for en banc reconsideration, the Court sua sponte withdrew its opinion and judgment issued January 8, 2009, thus rendering moot the motion for en banc reconsideration. *Cf. Brookshire Bros., Inc. v. Smith*, 176 S.W.3d 30, 41 n. 4 (Tex.App.-Houston [1st Dist.] 2004, pet. denied) (op. on reh'g).

After the Court's withdrawal of its January 8, 2009 opinion and judgment, during the pendency of the Court's plenary power over the case, and before another opinion and judgment had issued in the case, en banc consideration was requested from within the Court. *See* Tex.R.App. P. 41.2(c).

Chief Justice RADACK and Justices JENNINGS, KEYES, ALCALA, HANKS, HIGLEY, BLAND, SHARP, and NUCHIA participated in the vote to determine en banc consideration.

A majority of the Justices of the Court voted to deny en banc consideration. *See id.*

Justice KEYES, joined by Justice SHARP, dissenting from the denial of en banc consideration. *See id.*

EVELYN V. KEYES, Justice, dissenting from denial of en banc review.

I respectfully dissent from denial of en banc review. The sole issue on which appellees moved for summary judgment in this case was ownership of the cow that attacked and injured appellant John Kennamer, upon which appellees' duty to Kennamer was predicated in this suit for damages for negligence.[1] This was a hotly disputed fact issue, as the summary judgment proofs of both sides demonstrate. The standard of proof of traditional summary judgment is well-established. Specifically, summary judgment shall be granted if the summary judgment proofs and the pleadings establish show, "except as to the amount of damages, *there is no genuine issue as to any material fact* and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion or in an answer or any other response." Tex.R. Civ. P. 166a(c) (emphasis added). The standard of review for a traditional summary judgment motion is threefold: (1) the movant must show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment,

---

1. The panel opinion gratuitously states that there is no common law duty in Texas to fence livestock and that, although the Texas Agriculture Code imposes statutory duties that prohibit a stock owner from allowing livestock to run at large, that statute applies only if locally adopted. *See* Tex. Agric. Code Ann. § 143.071 (Vernon 2004). The panel appears to be making the argument *sua sponte* that section 143.071 does *not* impose a duty to keep animals on one's own property in Brazoria County and that there is no common law duty to protect against a dangerous animal that escapes from one's property and injures someone. There is absolutely no argument made either by appellees in their motion for summary judgment or by appellants in response that appellees did not owe a common law or statutory duty to appellants for which they could be liable in negligence *if* appellants owned the cow that attacked Kennamer on Kennamer's property. All that is at issue in this motion for summary judgment is

a material *fact* issue: who owned the cow? This is a material fact issue because if appellees did not own the cow, no liability could attach to them. *See Pierce v. Washington Mutual Bank*, 226 S.W.3d 711, 714 (Tex.App.-Tyler 2007, pet. denied) ("A fact is 'material' if it affects the ultimate outcome of the suit under the governing law."). It is not an argument about the existence of *legal* duty. It is improper for a court to grant summary judgment on an issue (lack of legal duty) that is not pled or argued in the summary judgment pleadings. *See* Tex.R. Civ. P. 166a(c); *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 339 (Tex.1993); *Coastal Cement Sand Inc. v. First Interstate Credit Alliance, Inc.*, 956 S.W.2d 562, 565 (Tex.App.-Houston [14th Dist.] 1997, pet. denied); *see also Khan v. Yazdchi*, No. 01–02–00918–CV, 2003 WL 21513628, at *4 (Tex.App.-Houston [1st Dist.] 2003, no pet.) (mem. op.). The *only* issue properly before this court is the fact-intensive issue of ownership of the cow.

the court must take evidence favorable to the nonmovant as true; and (3) the court must indulge every reasonable inference in favor of the nonmovant and resolve any doubts in the nonmovant's favor. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985); *see* TEX.R. CIV. P. 166a(c).

Here, the panel jumps through hoops to uphold the summary judgment, spending six pages of the slip opinion weighing the deposition testimony attached as summary judgment proof and determining for itself on the basis of its assessment of the credibility of the witnesses and the weight it assigns their deposition testimony that appellees did not own the cow. It concludes that appellees are entitled to summary judgment because they did not own the cow by disregarding *all* of the summary judgment evidence of ownership of the cow favorable to Kennamer, the non-movant, including his recognition of the cow as one owned by Noblitt, its age, its color, its skinniness, the length of its horns, the notches on the cow's ears, the brands and absence of brands on Noblitt's, Kennamer's, and Fitzgerald's cows, and by seizing upon Kennamer's testimony that the cow was branded and the *movants,'* appellees', conflicting testimony that Noblitt's cows were not branded. It then credits as true Noblitt's testimony that his cows were not branded (although one deposition witness suggested that Noblitt might have owned some branded cattle), and, having credited the *movant's* self-serving testimony on one of many disputed fact issues as dispositive of ownership of the cow, the panel concludes that *no* reasonable jury, presented with all the evidence from witnesses subject to cross-examination in a courtroom where their demeanor might be observed and all the disputed indicia of ownership of the cow might be weighed, could have found that Noblitt owned the cow. Therefore, the panel holds that appellees were entitled to judgment as a matter of law declaring them not liable for Kennamer's injuries.

The panel purports to follow *City of Keller v. Wilson* in reaching its judgment. *See* op. at 563 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex.2005)). Yet its review of the summary judgment evidence, by weighing deposition testimony and making a determination as to its weight and credibility, directly contradicts the instruction in *Keller* that, in cases requiring the review of the legal sufficiency of the evidence, "*[j]urors* are the sole judges of the credibility of the witnesses and the weight to be given their testimony. They may choose to believe one witness and disbelieve another. Reviewing courts cannot impose their own opinions to the contrary." 168 S.W.3d at 819 (emphasis added). The *Keller* court concluded:

> Whether a court begins by reviewing all the evidence or disregarding part in a legal-sufficiency review, there can be no disagreement about where that review should end. If the evidence at trial could enable reasonable and fair-minded people to differ in their conclusions, then jurors must be allowed to do so. *A reviewing court cannot substitute its judgment for that of the trier-of-fact, so long as the evidence falls within this zone of reasonable disagreement.*

*Id.* at 822 (emphasis added).

Even more fundamentally, the panel opinion contravenes the long-standing mandate of *Nixon v. Mr. Property Management. Co., Rhone–Poulenc, Inc. v. Steel,* and *Keller* itself that, in deciding whether there is a disputed material fact issue in the summary judgment context, evidence favorable to the non-movant must be taken as true and every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in his

favor. *Keller*, 168 S.W.3d at 824; *Rhone–Poulenc*, 997 S.W.2d at 221, 223 (Tex. 1999); *Nixon*, 690 S.W.2d at 548. *Keller* carries forward this mandate, stating, that "in the scope of review for summary judgment …, there is only one standard—a reviewing court must examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion." 168 S.W.3d at 824–25.

The problem with the standard of review employed by the panel arises, I believe, from the *Keller* court's next statement: "Reviewing courts do *not* disregard the evidence supporting the motion; if they did, all summary judgments would be reversed." *Id.* The court went on to explain, however, that *reviewing* all of the evidence in a summary judgment case does *not* mean *crediting* the evidence that supports the *movant* and indulging inferences and resolving all reasonable doubts in the movant's favor. *See id.* at 825. Rather, "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law," i.e., the standard for legal sufficiency of the evidence. *Id.* at 825. The court concluded, "Whether a reviewing court begins by considering all the evidence or only the evidence supporting the verdict, legal-sufficiency review in the proper light must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Id.* at 827. The court explained, "Jurors … are not free to believe testimony that is conclusively negated by undisputed facts. But whenever reasonable jurors could decide what testimony to discard, a reviewing court must assume they did so in favor of their verdict, and disregard it in the course of legal sufficiency review." *Id.* at 820.

The critical difference between the legal sufficiency standard of review in a trial context, as described in *Keller*, and summary judgment review, in light of *Keller*, is, of course, that, in the summary judgment context, the reviewing court must review all evidence in a light favorable to the *non-movant*, rather than the (non-existent) verdict, discard all testimony favorable to the *movant*, and, unless the movant's evidence is conclusively negated by undisputed facts, disregard all evidence contrary to the non-movant in the course of its review. The panel in this case, misreading *Keller*, did just the opposite. It reviewed the evidence in a light favorable to the summary judgment; it discarded all testimony relevant to ownership of the cow favorable to Kennamer, the non-movant; and, weighing disputed evidence, it disregarded all evidence contrary to the movants' testimony that they did not own the cow.

To be entitled to summary judgment, appellees had the burden of proving that there was no genuine material issue as to who owned the cow that attacked Kennamer as a matter of law. They could have proved this only if Kennamer had *not* produced evidence that appellees owned red cows like the one that attacked him, that he had seen the cow that attacked him on appellants' ranch, that appellees' cows had gotten out of their enclosure and invaded Kennamer's ranch as recently as five months before the incident at bar, and that appellees' cattle often exhibited wild and aggressive behavior, including attacking a man on horseback and seriously injuring him, chasing a testifying witness for 400–500 yards, and attacking a rider on a 4–wheeler, and if Kennamer, the eye-witness to the attack, had *not* produced summary judgment evidence as to the age, size, condition, length of horns, branding, and ear notches of the attacking red cow and of appellees' cows. This evidence disputed the movants' evidence as to the identifying characteristics of the cow that attacked

him, from which the ownership of the cow might be reasonably inferred.

If the panel had followed the mandate of *Nixon, Rhone–Poulenc,* and *Keller,* it would have had to have taken as true all of Kennamer's summary judgment evidence that appellees owned the cow, and it could not have credited for summary judgment purposes any of appellees' conflicting evidence. Instead, the panel discarded all of the non-movant's summary judgment evidence about the description and ownership of the cow except Kennamer's statement that the cow was branded, and it then credited as dispositive Noblitt's self-serving fact testimony that he did not brand his cows. In doing so, the panel fully usurped the role of the jury who could have heard that disputed testimony in the context of a trial.

If appellants' summary judgment evidence is taken as true and appellants' conflicting evidence is disregarded, as required by Texas law, the summary judgment in favor of appellees cannot be sustained. This Court should have reversed the summary judgment and sent the case back for trial on the disputed material fact issue of who owned the cow. It should not have weighed conflicting evidence, determined the credibility of witnesses from the summary judgment proofs, and determined for itself that the red cow was branded with an upside-down "U," that appellants' cows were *not* branded with an upside-down "U," and, therefore, no reasonable juror could have decided the case in favor of appellants.

The panel, however, reads *Keller* as requiring it to weigh the evidence for itself and to determine whether reasonable people could differ with *its own judgment.* I believe that this is a plainly erroneous interpretation of controlling law and that it misapplies the summary judgment rule in a way that subverts both the language and purpose of the rule, results in a miscarriage of justice in this case, and distorts summary judgment practice within the jurisdiction of this Court. I believe it wrongfully encourages parties to file summary judgment motions on fact issues as to which there is conflicting evidence in the hope that this Court, following its own precedent, will determine that no reasonable person could disagree with its own determination of disputed facts, transforming summary judgment practice from a means of disposing of cases that present only *legal* issues to a means of trying *material fact issues* by selected proofs submitted to the court, as in the continental European system. For those reasons, I believe this case satisfies the criteria for en banc review. *See* Tex.R.App. P. 41.2(c).[2]

I would grant en banc review.

**2.** Rule 41.2(c) provides:

En banc consideration of a case is not favored and should not be ordered unless necessary to secure or maintain uniformity of the court's decisions or unless extraordinary circumstances require en banc consideration.

Tex.R.App. P. 41.2(c).