**Opinion issued December 10, 2015**



In The

# Court of Appeals

For The

# First District of Texas

—————————————

## NO. 01-13-00618-CV

—————————————

**ALAN SCHROCK, Appellant**

**V.**

**CITY OF BAYTOWN, Appellee**

---

On Appeal from County Civil Court at Law No. 1
Harris County, Texas
Trial Court Case No. 1007923

---

## MEMORANDUM OPINION ON REHEARING

Appellee, the City of Baytown ("the City"), has filed a motion for rehearing

of our April 23, 2015 opinion and judgment. We deny the motion for rehearing,

withdraw our opinion and judgment of April 23, 2015, and issue this opinion and a new judgment in their stead.[1]

Appellant, Alan Schrock, challenges the trial court's rendition of summary judgment against him in his lawsuit against the City for a declaratory judgment[2] and for taking his property.[3]  In five issues, Schrock contends that the trial court erred in granting the City summary judgment dismissing his lawsuit.

We reverse and remand.

## Background

In his second amended petition, Schrock alleges that in 1993, he purchased a house at 606 Vista Avenue in the City to use as a rental property (the "property"). From 1993 to 2008, each time he leased the property to a new tenant, the City required, before it connected utility services (water, sewer, and trash disposal) in the tenant's name, that the tenant pay it a deposit and provide it a copy of the lease. Each time he leased the property, Schrock provided the City with a copy of the lease agreement, either by furnishing the new tenant with an extra copy to give to the City or by providing a copy of the lease agreement directly to the City.

---

[1] In regard to the City's alternative request for en banc reconsideration, the request is rendered moot by the withdrawal and reissuing of our opinion. *See Kennamer v. Estate of Noblitt*, 332 S.W.3d 559, 561–62 (Tex. App.—Houston [1st Dist.] 2009, pet. denied); *Brookshire Bros. v. Smith*, 176 S.W.3d 30, 41 n.4 (Tex. App.—Houston [1st Dist.] 2004, pet. denied).

[2] *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 37.001–.011 (Vernon 2015).

[3] *See* TEX. CONST. art. I, § 17.

2

In 2009, the City notified Schrock that he owed it $1,999.67 for utility services provided to ten of his prior tenants, dating back to 1993. It gave him copies of billing invoices, listing the names and account numbers of the prior tenants. And the City demanded that Schrock pay the outstanding sum within fourteen days to avoid having a lien placed on the property. After a hearing, the City reduced the amount due to $1,157.39 for unpaid utility bills that had accrued over the preceding four years, rather than the preceding sixteen years. And it gave Schrock fourteen days to pay. However, Schrock did not receive notice of the City's decision, and, after he did not pay the sum assessed, the City filed a lien against the property. According to Schrock, the City failed to perfect its lien or provide him with notice of the lien. And the City continued to provide utility services to the property until January 20, 2010, when it refused to provide services to Schrock's new tenant.

Schrock further alleges that he first learned in 2009 that the City had in 1991 enacted an ordinance that requires landlords who wish to prevent the City from filing liens against their rental properties and discontinuing utility services to those properties, to submit a "declaration" that their properties are "rental propert[ies], which [they] d[o] not wish to be security" [sic] for a tenant's utility bills.[4] According to Schrock, he complied with the ordinance each time he had leased the

___

[4] *See* Baytown, Tex., Code of Ordinances, ch. 98, art. III, § 98-65(i) (1967) (amended 1991).

3

property to a new tenant by providing a copy of the lease to the City. Thus, the City at all times had notice that he was using the property as rental property. Also, he complied with the Texas Local Government Code, which provides that a "municipality's lien shall not apply to bills for service connected in a tenant's name after notice by the property owner to the municipality that the property is rental property."[5] And he notes that the statute prohibits requiring, as a condition of connecting service, a third-party guarantee of a customer's utility bill or requiring, as a condition of connecting or continuing service, a customer to pay for service previously furnished to another customer at the same address.[6]

In 2011, the City amended its ordinance, removing the requirement that landlords file rental property declarations. Rather, if the City "knows" that a property is occupied by a tenant, it may not file a lien against the property; however, it may report the tenant's delinquency to a credit bureau. In 2012, the City further amended its ordinance, allowing utility services to continue to be provided to a property in accordance with the Local Government Code.

Regardless, the City, Schrock alleges, has since January 2010 refused to provide water and wastewater services to the property. Without water and wastewater services to the property, Schrock has not been able to use the property as a rental property, and he has been denied all economically viable use of the

---

[5] TEX. LOC. GOV'T CODE ANN. § 552.0025(e) (Vernon 2015).

[6] See id. § 552.0025(a), (b).

4

property. As a result, the property has fallen into disrepair and has become uninhabitable. Schrock further alleges that the City's actions constitute an unreasonable interference with his right to use and enjoy the property. And they further constitute an "unlawful exercise of police power which primarily and adversely affected a small number of landlords of single family residences."[7] Schrock notes that from 1991 to 2012, the City had filed eighteen liens against rental properties, but only eight remained, including the lien on the property.[8] He argues that the City's enforcement of the ordinance was not "in response to a great public necessity," but constituted an "attempt to coerce a small number of landlords into paying their tenants' water bills" out of convenience because it was difficult for the City to collect from tenants who had moved.

Schrock seeks "all actual damages resulting from the [City's] inverse condemnation of his [p]roperty." He further seeks a declaration that certain sections of the City's ordinance[9] are "invalid, illegal, and/or unconstitutional" and

---

[7] *See* U.S. CONST. amend. V; TEX. CONST. art I, § 17.

[8] Although the City asserts that it has released its lien against the property and has attached a copy of a lien release to its brief, the City concedes that it did not file the lien release in the trial court, did not present it to the trial court, and has not made the lien release part of the record in this appeal. We must determine a case on the record as filed, and may not consider documents attached as exhibits to briefs. *See Till v. Thomas*, 10 S.W.3d 730, 733 (Tex. App.—Houston [1st Dist.] 1999, no pet.).

[9] *See* Baytown, Tex., Code of Ordinances, ch. 98, art. III, § 98-65(i), (g).

conflict with statute.[10] And he seeks "clarification as to the validity of [the City's] utility lien," which was put in place under the prior ordinance and remains in place after the City's amendment of the ordinance. Notwithstanding the amendment, Schrock "still seeks clarification as to his rights under the current version of [the ordinance] and whether [the City] can lawfully prevent [his] tenants from obtaining utility service at the property."

In its third amended answer, the City generally denied Schrock's claims and asserted the affirmative defenses of governmental immunity and limitations. The City subsequently filed a summary-judgment motion, seeking dismissal of Schrock's claims for want of jurisdiction on the ground that no regulatory taking occurred and, therefore, the City has not waived its immunity. It asserted that Schrock "used [the] [p]roperty as rental property" and has, since 1993, rented the property to eleven tenants, whom it lists by name and whom it alleged had vacated the property owing outstanding utility payments to the City. It further asserted that although Schrock, pursuant to its ordinance, could have filed a rental property "declaration" "wherein [he could have] declare[d] the [p]roperty as rental property and not [have been] subject to a lien for service to his tenants," he failed to do so. The City argued that no compensable regulatory taking had occurred because its regulation did not deprive Schrock of all economically viable use of the property or

---

[10]    *See* TEX. LOC. GOV'T CODE ANN. § 552.0025.

unreasonably interfere with his right to use the property. Rather, according to the City, Schrock held his property subject to the City's valid exercise of police power, and its practice of discontinuing utility services for the failure of tenants to pay related charges is a valid exercise of its police power. The City noted that Schrock tendered the outstanding balance to it on October 20, 2010, but left the utility office without paying; it provided water service to the property at Schrock's request from February to April 2012; and the 2009 and 2012 appraised values of the property remained steady at $24,999. Further, in its supplemental summary-judgment motion, the City argued that Schrock's declaratory-judgment claims are "barred" because he "seeks to establish a right to relief for [his] monetary damages demand." And it further noted that the complained-of ordinance has been amended.

The City attached to its summary-judgment motions Schrock's discovery responses; the affidavit of Gina Rivon, its Utility Billing Manager, who attested to each of the tenants' names, dates of utility services, and delinquent sums due; the City's letter of delinquency to Schrock; his tenants' utility account invoices; the City's letter of decision in Schrock's administrative appeal; and its lien on the property.

In his response to the City's summary-judgment motions, Schrock reiterated that the City has had notice at all times that he was using the property as rental

7

property. And he asserted that the Local Government Code prohibits a municipality from imposing a lien for utility service "connected in a tenant's name after notice by the property owner to the municipality that the property is rental property."[11] He further asserted that genuine issues of material fact exist as to whether the City's requirement that landlords submit rental property declarations, in addition to the copies of the leases it has always required, is unreasonable and whether the City's enforcement of its ordinance is arbitrary. Schrock attached to his response his affidavit; the affidavit of Gina Rivon, the City's Utility Billing Manager; and copies of the utility billing invoices, the ordinance at issue, and the City's lien against the property.

In his affidavit, Schrock testified that in January 2010, the City informed him that it would not provide water service to the property until the lien was paid. He then went to the City's utility billing office and tendered a check for $1,251.59 as instructed. The City's billing analyst, Z. Bawany, however, refused payment. And, although the City's ordinance requires that whenever a person "pays all principal, interest and the filing fee of a lien validly filed pursuant to this section, the supervisor of the utility billing division shall execute a release of that lien and surrender it to the paying party,"[12] the City refused to release the lien unless

---

[11] *See id.*

[12] Baytown, Tex., Code of Ordinances, at § 98-65(h).

Schrock also paid the delinquent bill of yet another tenant. When Schrock again attempted to satisfy the lien, Bawany again refused payment, stating that the lien would not be released until Schrock satisfied all delinquent utility payments pertaining to all of his previous tenants at all of his properties. At the time, Schrock owned seventeen rental properties in the City.

Schrock further testified that without utilities and occupants to maintain the property, it has fallen into disrepair and become uninhabitable; it will cost "at least $8,000 to make the [p]roperty habitable again"; his tenant in January 2010 rescinded his lease, which provided for monthly payments of $600, and the City's actions have prevented him from renting the property to other tenants.

Subsequently, the City removed this case to a federal district court, which dismissed Schrock's federal claims for lack of ripeness and limitations, and it remanded his state law claims back to state court.[13] The City then filed in state court a second supplemental motion for summary judgment, requesting dismissal of Schrock's remaining state constitutional and declaratory-judgment claims on the ground that Schrock had failed to state a viable taking or declaratory-judgment claim and, alternatively, that his claims are barred by limitations. The City attached to its motion a copy of the federal district court's opinion, copies of the

---

[13]     *See Schrock v. City of Baytown*, No. H-12-2455 (S.D. Tex. Mar. 11, 2013).

amended ordinance, and excerpts from the depositions of Schrock, Bawany, and Rivon.

In his response, Schrock argued that a regulatory taking had occurred when the City denied all water and wastewater services to the property because this denied him all economically viable use of the property and unreasonably interfered with his right to use and enjoy the property. He asserted that a ten-year limitations period applies. And he further argued that he is entitled to bring his declaratory-judgment action because there remains a question as to whether the City "has the right to refuse to connect utility services based on a lien for utility services that [he] didn't incur."

After a hearing, the trial court, without stating the grounds upon which it relied, granted the City summary judgment dismissing Schrock's claims. And it subsequently denied Schrock's motion for new trial.

**Standard of Review**

To prevail on a summary-judgment motion, a movant has the burden of establishing that it is entitled to judgment as a matter of law and there is no genuine issue of material fact. TEX. R. CIV. P. 166a(c); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995). When a defendant moves for summary judgment, it must either (1) disprove at least one essential element of the plaintiff's cause of action or (2) plead and conclusively establish each essential element of its

10

affirmative defense, thereby defeating the plaintiff's cause of action. *Cathey*, 900 S.W.2d at 341; *Yazdchi v. Bank One, Tex., N.A.*, 177 S.W.3d 399, 404 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). When deciding whether there is a disputed, material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). Every reasonable inference must be indulged in favor of the non-movant and any doubts must be resolved in its favor. *Id.* at 549. When a summary judgment does not specify the grounds on which the trial court relied, the reviewing court will affirm the judgment if any theory advanced in the motion is meritorious. *Harwell v. State Farm Mut. Auto. Ins. Co.*, 896 S.W.2d 170, 173 (Tex. 1995); *Summers v. Fort Crockett Hotel, Ltd.*, 902 S.W.2d 20, 25 (Tex. App.—Houston [1st Dist.] 1995, writ denied). Declaratory judgments rendered by summary judgment are reviewed under the same standards that govern summary judgments generally. *Bowers v. Taylor*, 263 S.W.3d 260, 264 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

## Regulatory-Takings Claim

In his first and second issues, Schrock argues that the trial court erred in granting the City summary judgment and dismissing his regulatory-takings claim on the ground of governmental immunity because he presented the court with a valid claim and, thus, the State has waived the City's governmental immunity. In

his third issue, Schrock argues that the trial court erred in granting the City summary judgment on his regulatory-takings claim on the ground of limitations because he commenced his lawsuit well within the ten-year limitations period applicable to his claim.

Under the doctrine of governmental immunity, a unit of government may not be sued without the express consent of the legislature. *See City of Hous. v. Hous. Firefighters' Relief & Ret. Fund*, 196 S.W.3d 271, 277 (Tex. App.—Houston [1st Dist.] 2006, no pet.). In the absence of a waiver of governmental immunity, a court has no subject matter jurisdiction to entertain a suit against a governmental unit. *See Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999). The doctrine of governmental immunity does not, however, shield a governmental entity from valid claims for compensation under the Takings Clause of the Texas Constitution. *Gen. Servs. Comm'n v. Little–Tex Insulation Co.*, 39 S.W.3d 591, 598 (Tex. 2001); *City of Hous. v. Guthrie*, 332 S.W.3d 578, 591–92 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (citing TEX. CONST. art. I, § 17). A plaintiff who prevails on his takings claim is entitled to compensation and the claim is not barred by immunity "even though the judgment would require the government to pay money for property previously taken." *City of El Paso v. Heinrich*, 284 S.W.3d 366, 376 (Tex. 2009).

"The ultimate determination of whether an ordinance constitutes a compensable taking is a question of law, but we depend on the district court to resolve disputed facts regarding the extent of the governmental intrusion on the property." *City of Lorena v. BMTP Holdings, L.P.*, 409 S.W.3d 634, 645 (Tex. 2013). "Thus, we must determine whether any disputed issues of fact exist concerning the extent of the City's intrusion on [Schrock's] property—in which case we must remand to the trial court to resolve the dispute and determine the extent of the government's intrusion." *Id.*

Courts have "generally eschewed any 'set formula' for determining how far is too far," when performing a regulatory takings analysis, "preferring to 'engag[e] in . . . essentially ad hoc, factual inquiries.'" *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1015, 112 S. Ct. 2886, 2893 (1992) (quoting *Penn Cent. Transp. Co. v. New York City*, 438 U.S. 104, 124, 98 S. Ct. 2646, 2659 (1978)); *Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468, 477 (Tex. 2012) (stating "whether a particular property restriction constitutes a taking depends largely upon the particular circumstances in that case"). Generally, we consider (1) the economic impact of the regulation on the claimant, (2) the character of the government action, and (3) the extent to which the regulation has interfered with the economic expectations of the property owner. *Penn Cent. Transp. Co.*, 438 U.S. 124, 98 S. Ct. at 2659.

13

In regard to the second factor, "where courts have found direct governmental actions in which the governmental defendant had regulatory authority over the matter causing the plaintiff's harm, they have generally found a taking." *Hearts Bluff Game Ranch*, 381 S.W.3d at 480. Here, it is undisputed that the City had direct regulatory authority over the matter causing the harm that Schrock alleges.

In regard to the first and third factors, a taking arises when a governmental regulation (1) denies a landowner all economically viable uses of his property or (2) unreasonably interferes with the landowner's right to use and enjoy his property. *See id.* at 489–91; *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 935–96 (Tex. 1998). Determining whether all economically viable use of a property has been denied requires an analysis of whether value remains in the property after the governmental action. *Mayhew*, 964 S.W.2d at 936. Determining whether the government has unreasonably interfered with a landowner's right to use and enjoy property requires consideration of the economic impact of the regulation and the extent to which the regulation interferes with the investment-backed expectations of the landowner. *Id.*

The City asserts, and its summary-judgment evidence shows, that the Harris County Appraisal District valued the property, both in 2009 and 2012, at $29,000. *See Hearts Bluff Game Ranch, Inc.*, 381 S.W.3d at 490. Schrock testified that the property, as a result of having no water or wastewater services, sat without

14

occupants for so long that it has become uninhabitable and infested with rats and mold. And it will "cost at least $8,000 to make the [p]roperty habitable again." Further, Schrock purchased the property with the expectation of using it as a rental property, and he has operated it as such since 1993. "The existing and permitted uses of the property constitute the 'primary expectation' of the landowner that is affected by regulation." *Mayhew*, 964 S.W.2d at 935. And a property owner has a constitutionally protected property interest in lost rents. *See Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1046 (5th Cir. 1998); *see also Sheffield Dev. Co., Inc. v. City of Glenn Heights*, 140 S.W.3d 660, 677 (Tex. 2004) ("The City argues that evidence of lost profits should be ignored, but we agree with the court of appeals that lost profits are clearly one relevant factor to consider in assessing the value of property and the severity of the economic impact . . . on a landowner."); *Vill. of Tiki Island v. Ronquille*, 463 S.W.3d 562, 579 (Tex. App.—Houston [1st Dist.] 2015, no pet.).

The City asserts that its "practice of discontinuing utility services due to the failure to pay related charges is well settled in law and is within [its] valid exercise of its police power." Its summary-judgment evidence shows that Schrock owns the property, $1,157.39 is owed for unpaid utility services that the City provided to tenants at the property, Schrock did not pay the amount owed, and the City placed a lien on the property and discontinued further utility services. The City asserts

15

that Schrock did not, pursuant to its ordinance, file a declaration that he did not want the property to be used as security for the tenants' utility services.

A "municipality may take the necessary action to operate and maintain [a water] system and to require water customers to pay charges imposed for the water furnished." TEX. LOC. GOV'T CODE ANN. § 552.017(c) (Vernon 2015) (governing water systems in home-rule municipalities). Courts have recognized that control of water and waste disposal services are essential health matters, fall within the police powers of a city, and include the right to discontinue utility services *to a person who has become delinquent* in the payment of service fees. *City of Breckenridge v. Cozart*, 478 S.W.2d 162, 165 (Tex. App.—Eastland 1972, writ ref'd n.r.e.). However, the City, as a home-rule city, is prohibited from enacting an ordinance that "contain[s] any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State." TEX. CONST. art. XI, § 5; *see City of Carrollton v. Tex. Comm'n on Envtl. Quality*, 170 S.W.3d 204, 208 (Tex. App.—Austin 2005, no pet.) (noting although home-rule cities "have a vast amount of power, their authority is not without limitations").

Texas Local Government Code section 552.0025 provides, in pertinent part:

(a) A municipality may not require a customer to pay for utility service previously furnished to another customer at the same service connection as a condition of connecting or continuing service.

16

(b) A municipality may not require a customer's utility bill to be guaranteed by a third party as a condition of connecting or continuing service.

. . . .

(e) The municipality's lien shall not apply to bills for service connected in a tenant's name after notice by the property owner to the municipality that the property is rental property.

TEX. LOC. GOV'T CODE ANN. § 552.0025(a), (b), and (e) (Vernon 2015).

Schrock testified that he has been renting the property to tenants since 1991; the City has always required that a new tenant submit a copy of his lease agreement to the City and pay a deposit before utility services could be connected; and, each time that he has rented to a tenant, he has provided the City with a copy of the lease agreement, either by furnishing the tenant with an extra copy to give to the City or by providing a copy of the lease agreement directly to the City. Thus, Schrock presented evidence that the City has had notice at all times that he was using the property as rental property. And the City's own summary-judgment evidence establishes that it knew that the outstanding utility payments that it sought to collect from Schrock, by placing a lien on the property and conditioning future water and wastewater services to the property on his payment, pertained to other utility customers and not to Schrock himself.

After taking as true all evidence favorable to Schrock, as the non-movant, and indulging every reasonable inference in his favor, we conclude that the City has not conclusively negated Schrock's regulatory-takings claim. *See Cathey*, 900

S.W.2d at 341; *Yazdchi*, 177 S.W.3d at 404; *Nixon*, 690 S.W.2d at 548–49. Accordingly, we hold that the trial court erred in granting the City summary judgment and dismissing Schrock's regulatory-takings claim on the ground of governmental immunity.

We sustain Schrock's first and second issues.

In regard to limitations, Schrock asserts that his claim accrued on January 20, 2010, when the City refused water service to his tenant, and he filed his lawsuit on January 19, 2012, well within the ten-year limitations period. The City asserts that Schrock has alleged a property-damage claim, which is subject to a two-year limitations period; Schrock's claim accrued in June 2009, when it filed a lien on the property; and he did not file his lawsuit until January 19, 2012, which was after the limitations period had expired.

There is not a statutory provision that provides a certain limitations period for inverse-condemnation actions. *Grunwald v. City of Castle Hills*, 100 S.W.3d 350, 353–54 (Tex. App.—San Antonio 2002, no pet.); *see also Hallco Tex. Inc. v. McMullen Cnty.*, 221 S.W.3d 50, 74 (Tex. 2007) (Hecht, J., dissenting) ("It is not entirely clear what statute of limitations applies to such claims . . . ."). Courts have held that a regulatory-taking action is barred after the expiration of a ten-year period of limitations, but that an action for damage to property is governed by a two-year period of limitations. *Maguire Oil Co. v. City of Hous.*, 69 S.W.3d 350,

18

358 n.4 (Tex. App.—Texarkana 2002, pet. denied) ("There is no specific statute of limitations for an inverse condemnation claim. However, courts have held the ten-year statute of limitations to acquire land by adverse possession applies."); *Trail Enters., Inc. v. City of Hous.*, 957 S.W.2d 625, 631 (Tex. App.—Houston [14th Dist.] 1997, pet. denied); see TEX. CIV. PRAC. & REM. CODE ANN. §§ 16.003(a) (Vernon Supp. 2014) (governing injury to property), 16.026(a) (Vernon 2002) (governing adverse possession).

Having concluded that the City has not conclusively negated Schrock's regulatory-takings claim, which is based on his assertion that he has been deprived of all economically viable use of the property, we further conclude that his claim is subject to the ten-year limitations period. *See Hudson v. Ark. La. Gas Co.*, 626 S.W.2d 561, 563 (Tex. App.—Texarkana 1981, writ ref'd n.r.e.) (reversing summary judgment because trial court did not apply ten-year limitations period to inverse condemnation claim). Whether Schrock's claim accrued at the time that the City placed the lien on the property or when it refused utility service to his tenant on January 20, 2010, Schrock's lawsuit, which he filed on January 19, 2012, was commenced well within the ten-year limitations period. Accordingly, we hold that the trial court erred in granting the City summary judgment and dismissing Schrock's regulatory-takings claim on the ground of limitations.

We sustain Schrock's third issue.

19

## Declaratory-Judgment Claim

In his fourth issue, Schrock argues that the trial court erred in granting the City summary judgment and dismissing his declaratory-judgment action on the ground of governmental immunity because he presented a valid claim and, thus, the City's governmental immunity is waived. In his fifth issue, Schrock asserts that his declaratory-judgment action is not barred by limitations.

City of Baytown Code of Ordinances, section 98-65, provides in pertinent part as follows:

(a) Water. Liens for unpaid water charges shall be filed according to the following:

(1) After the city has terminated a customer's water . . . , the supervisor *shall file a lien on the property served by the terminated water service* and in the amount the customer whose service was terminated owed to the city for water service at the time of the termination of services.

. . . .

(g) Reconnection of services. *No water, garbage or sewer services shall be provided to property encumbered by a lien* filed pursuant to this section. However, the supervisor of the utility billing division shall be authorized to reconnect water, garbage and wastewater services if the customer agrees in writing to pay the accrued water and wastewater charges . . . .

. . . .

(i) Rental property.

(1) *The owner of any property . . . rented to another [in which the] tenant carries city water, sewer or garbage collection services in the tenant's name, may prevent the city from using that property as security for the . . . charges for service to that*

20

> *property and from filing any lien on such property
> . . . by filing with the city utility billing division **a
> declaration** in writing specifically naming the
> service address of that property and declaring
> such to be rental property which the owner does
> not wish to be security for the water, sewer and
> garbage collection services to that property.*

> (2)     When such declaration has been filed with the city
> prior to the time the account holder begins to
> receive services, the city shall collect a deposit in
> the amount of $125.00 . . . .

Baytown, Tex., Code of Ordinances, ch. 98, art. III, § 98-65 (1967) (amended 2012) (emphasis added).

In his declaratory-judgment action, Schrock seeks a declaration that sections 98-65(g) and (i) of the City's ordinance are "invalid, illegal, and/or unconstitutional" and conflict with Local Government Code section 55.0025. *See id.*; TEX. LOC. GOV'T CODE ANN. § 552.0025. And he seeks "clarification as to the validity of [the City's] utility lien," which was put in place under the prior ordinance and remains in place after the City's amendment of the ordinance. Notwithstanding the amendment, Schrock "still seeks clarification as to his rights under the current version of [the ordinance] and whether [the City] can lawfully prevent [his] tenants from obtaining utility service at the property."

Under the Uniform Declaratory Judgments Act (the "UDJA"),

> A person interested under a deed . . . *whose rights,* status, or other
> legal relations *are affected by a* statute, *municipal ordinance*, contract,
> or franchise may have determined *any question of* construction or

21

*validity* arising under the instrument, statute, ordinance, contract, or franchise *and obtain a declaration of rights*, status, or other legal relations thereunder.

TEX. CIV. PRAC. & REM. CODE ANN. § 37.004 (Vernon 2015) (emphasis added). Although the UDJA "expressly allows persons to challenge ordinances," it does not constitute "a general waiver of sovereign immunity." *Tex. Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 621–22 (Tex. 2011); *Tex. Nat. Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 859–60 (Tex. 2002). "For claims challenging the validity of ordinances . . . , however, the [UDJA] requires that the relevant governmental entities be made parties, and thereby waives immunity." *Heinrich*, 284 S.W.3d at 373 (citing TEX. CIV. PRAC. & REM. CODE ANN. § 37.006(b) ("In any proceeding that involves the validity of a municipal ordinance . . . , the municipality must be made a party . . . .")); *see also Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 697–98 (Tex. 2003) (noting where legislature requires state be joined in lawsuit for which immunity would otherwise attach, "[the] Legislature has intentionally waived the State's immunity").

The City asserts that Schrock's "requested declaratory relief is not justiciable because it merely restates his inverse condemnation claim." *See BHP Petroleum Co. v. Millard*, 800 S.W.2d 838, 841 (Tex. 1990) ("The Declaratory Judgments Act is 'not available to settle disputes already pending before a court.'" (citations omitted)). Schrock, in his takings claim, seeks damages, i.e., property

22

damage and lost rents, caused by the City's deprivation of water and wastewater services to the property. In contrast, Schrock, in his declaratory action, challenges the validity of the sections of the City's ordinance, under which the City still holds a lien against his property.

The City further argues that Schrock's declaratory action is moot because it has released its lien against the property. It requests that we take judicial notice of the copy of the lien release that it has attached to its brief. It is well established that documents attached to an appellate brief which are not part of the record in the trial court may not be considered on appeal. *See WorldPeace v. Comm'n for Lawyer Discipline*, 183 S.W.3d 451, 465 n.23 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) ("[W]e cannot consider documents attached as appendices to briefs and must consider a case based solely upon the record filed."). Here, it is important to note that the City, as the movant for summary judgment, bore the burden to present evidence in the trial court to conclusively establish its right to judgment. *See Cathey*, 900 S.W.2d at 341. Moreover, even were we to take judicial notice of the City's lien release and conclude that the City's lien against Schrock's property has been discharged, notwithstanding that the release attached to the City's brief contains no indicia of having been filed in the county's real property records, such a release of the City's existing lien would not resolve the

issue of whether the City had a valid right to take a lien against the property for utility bills that arose under the prior ordinance and remain outstanding.

In its motion for rehearing, the City asserts that "the UDJA waives sovereign immunity in particular cases, such as in a suit challenging the validity of a statute or municipal ordinance" and "Shrock does not challenge the validity of an ordinance." However, Schrock, in his second amended petition, does expressly seek a declaration that sections 98-65(g) and (i) of the City's ordinance are "invalid."

We hold that Schrock's declaratory-judgment action is not barred by governmental immunity.

Further, because claims for declaratory relief necessarily derive from claims for substantive relief, the statute of limitations for the underlying action at law generally is applied to an accompanying action for declaratory relief. *See Nw. Austin Mun. Util. Dist. No. 1 v. City of Austin*, 274 S.W.3d 820, 839 (Tex. App.— Austin 2008, pet denied). Having concluded that the applicable limitations period for Schock's regulatory-takings claim is ten years, we further conclude that the period applicable to Schrock's declaratory-judgment action is also ten years. *See id*. Thus, he filed his declaratory-judgment action within the applicable limitations period.

Accordingly, we hold that the trial court erred in granting the City summary judgment and dismissing Schrock's declaratory-judgment action.

We sustain Schrock's fourth and fifth issues.

## Conclusion

We reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.


Terry Jennings
Justice

Panel consists of Chief Justice Radack and Justices Jennings and Keyes.